IN THE DISTRICT COURT OF GUAM

TERRITORY OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) Criminal Case No. 18-00010 |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| JOHN D. WALKER, | ) |
| aka JON WALKER, | ) |
| MARVIN R. REED, | ) |
| KENNETH R. CROWE, | ) |
| PHILLIP T. KAPP, | ) |
| | ) |
| Defendants. | ) |

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE MICHAEL J. BORDALLO,
MAGISTRATE JUDGE
(Via telephone)
MAY 6, 2020; 9:00 A.M.
HAGATNA, GUAM

**Motion Hearing on an Amended Motion for Hearing to Address**   09:01:50AM
**Potential Conflict of Interest and a Motion for Protective**   09:01:54AM
**Order, Prevent Removal of Evidence, Schedule Inspection,**   09:01:58AM
**Prevent Harassment of Witnesses**   09:02:01AM

Proceedings recorded by *mechanical stenography*.

Veronica F. Flores, CSR-RPR
Official Court Reporter
520 W. Soledad Avenue
Hagatna, Guam 96910

APPEARANCES


Appearing on behalf of plaintiff:


**OFFICE OF THE UNITED STATES ATTORNEY**
**BY: STEPHEN LEON GUERRERO, AUSA** (via telephone)
**MARIE MILLER, SAUSA** (via telephone)
Suite 500, Sirena Plaza
108 Hernan Cortez Avenue
Hagatna, Guam 96910
(671) 472-7332


Appearing on behalf of Defendant Walker:


**LAW OFFICE OF JAMES M. MAHER**
**BY: JAMES M. MAHER, ESQ.** (via telephone)
238 Archbishop Flores Street
Suite 300, DNA Building
Hagatna, Guam 96910
(671) 477-7892

**BY: MACK K. MARTIN, ESQ.** (via telephone)
125 Park Avenue, 5th Floor
Oklahoma City, OK 73102


Appearing on behalf of Defendant Reed:

**LAW OFFICE OF PETER C. PEREZ**
**BY: PETER C. PEREZ, ESQ.** (via telephone)
238 Archbishop Flores Street
Suite 802, DNA Building
Hagatna, Guam 96910
(671) 475-5055

Appearing on behalf of Defendant Crowe:

**LAW OFFICE OF LUJAN & WOLFF**
**BY: DAVID J. LUJAN, ESQ.** (via telephone)
238 Archbishop Flores Street

**LAW OFFICE OF GREGORY NICOLAYSEN**
**BY: GREGORY NICOLAYSEN, ESQ.** (via telephone)
27240 Turnberry Lane, Suite 200
Valencia, CA 91355
(818) 970-7247

Appearing on behalf of Defendant Kapp:

**LAW OFFICE OF ANTHONY C. PEREZ**
**BY: ANTHONY C. PEREZ, ESQ.** (via telephone)
238 Archbishop Flores Street
Suite 802, DNA Building
Hagatna, Guam 96910
(671) 475-5055

**BY: EDWARD A. MCCONWELL, ESQ.,** (via telephone)
**LAURA L. MCCONWELL, ESQ.** (via telephone)
5201 Johnson Drive, Suite 300
Mission, KS 66205

Appearing on behalf of Defendant Hansen:

**LAW OFFICE OF EDWARD C. HAN**
**BY: EDWARD C. HAN, ESQ.** (via telephone)
378 Sara Street
Purple Heart Highway
Maite, GU 96910
(671)477-9219

Appearing on behalf of Defendant Rogers:

**LAW OFFICE OF GUMATAOTAO & POLE**
**BY: WILLIAM B. POLE, ESQ.** (via telephone)
Suite 301, San Ramon Building
115 San Ramon Street
Hagatna, GU 96910
(671)475-0200

ALSO PRESENT:

John Walker, Defendant (via telephone)

Marvin Reed, Defendant (via telephone)

Kenneth Crowe, Defendant (via telephone)

Phillip Kapp, Defendant (via telephone)

Viranousith Khamvongsa, IRS agent (via telephone)
-------------------------------------------------
I N D E X

Page

Court to take matters under advisement and
issue decision shortly                         38

<table>
<tr><td>1</td><td>May 6, 2020; 9:01 a.m.; Hagatna, Guam</td><td>09:00AM</td></tr>
<tr><td>2</td><td>* * *</td><td>09:00AM</td></tr>
<tr><td>3</td><td>THE CLERK:  Your Honor, all the parties are</td><td>09:01AM</td></tr>
<tr><td>4</td><td>present.</td><td>09:01AM</td></tr>
<tr><td>5</td><td>THE COURT:  All right, go ahead and call the case</td><td>09:01AM</td></tr>
<tr><td>6</td><td>then.</td><td>09:01AM</td></tr>
<tr><td>7</td><td>THE CLERK:  Okay, Your Honor.  Come to order, the</td><td>09:01AM</td></tr>
<tr><td>8</td><td>District Court of Guam is now in session, the Honorable</td><td>09:01AM</td></tr>
<tr><td>9</td><td>Michael J. Bordallo presiding on Criminal Case 18-00010, <em>USA</em></td><td>09:01AM</td></tr>
<tr><td>10</td><td><em>versus John D. Walker, Marvin R. Reed, Kenneth R. Crowe,</em></td><td>09:01AM</td></tr>
<tr><td>11</td><td><em>Phillip T. Kapp, Randall Rogers, and Hansen Helicopters</em> on a</td><td>09:01AM</td></tr>
<tr><td>12</td><td>Motion Hearing on an Amended Motion for Hearing to Address</td><td>09:01AM</td></tr>
<tr><td>13</td><td>Potential Conflict of Interest and a Motion for Protective</td><td>09:01AM</td></tr>
<tr><td>14</td><td>Order, Prevent Removal of Evidence, Schedule Inspection,</td><td>09:01AM</td></tr>
<tr><td>15</td><td>Prevent Harassment of Witnesses.</td><td>09:02AM</td></tr>
<tr><td>16</td><td>Counsels, please state your appearance, starting</td><td>09:02AM</td></tr>
<tr><td>17</td><td>with the government.  And we'll go from Defendant 1 all the</td><td>09:02AM</td></tr>
<tr><td>18</td><td>way down.  Thank you.</td><td>09:02AM</td></tr>
<tr><td>19</td><td>MR. LEON GUERRERO:  Buenas and hafa adai, Your</td><td>09:02AM</td></tr>
<tr><td>20</td><td>Honor, this is Assistant U.S. Attorney Stephen Leon Guerrero.</td><td>09:02AM</td></tr>
<tr><td>21</td><td>Also present with me is IRS Agent Sith Khamvongsa.  Also</td><td>09:02AM</td></tr>
<tr><td>22</td><td>present is co-counsel, Special Assistant U.S. Attorney Marie</td><td>09:02AM</td></tr>
<tr><td>23</td><td>Miller.</td><td>09:02AM</td></tr>
<tr><td>24</td><td>MS. MILLER:  Hafa adai, Your Honor.</td><td>09:02AM</td></tr>
<tr><td>25</td><td>THE COURT:  Hafa adai.</td><td>09:02AM</td></tr>
</table>

| | |
|---|---|
| 1 | MR. MARTIN:  Your Honor, this is Mack Martin.  I | 09:02AM |
| 2 | represent John Walker.  I'm getting him on the other line.  I | 09:02AM |
| 3 | had accidentally disconnected him, but he'll be on the phone | 09:02AM |
| 4 | in just a moment. | 09:02AM |
| 5 | THE COURT:  And is local Counsel, Jim Maher, also | 09:02AM |
| 6 | on or is it just you, Mr. Martin? | 09:02AM |
| 7 | MR. MARTIN:  Mr. Maher is on. | 09:02AM |
| 8 | THE COURT:  Okay.  All right, thank you. | 09:02AM |
| 9 | MR. PEREZ:  Good morning, Your Honor, Peter Perez | 09:02AM |
| 10 | present with Mr. Reed by telephone. | 09:02AM |
| 11 | THE COURT:  Okay.  Thank you. | 09:03AM |
| 12 | MR. LUJAN:  Good morning, Your Honor, -- Lujan | 09:03AM |
| 13 | and, you know, and also on the phone is Gregory Nicolaysen on | 09:03AM |
| 14 | behalf of Rufus Crowe and Mr. Nicolaysen will be arguing on | 09:03AM |
| 15 | behalf of Mr. Crowe. | 09:03AM |
| 16 | MR. NICOLAYSEN:  Good morning, Your Honor, Greg | 09:03AM |
| 17 | Nicolaysen here from Los Angeles. | 09:03AM |
| 18 | MR. POLE:  Attorney William Pole, Your Honor -- | 09:03AM |
| 19 | go ahead. | 09:03AM |
| 20 | THE COURT:  Go ahead, go ahead. | 09:03AM |
| 21 | MR. POLE:  William Pole, Your Honor, on behalf of | 09:03AM |
| 22 | Randall Rogers.  He's in Georgia. | 09:03AM |
| 23 | THE COURT:  Okay. | 09:03AM |
| 24 | MR. MCCONWELL:  Edward McConwell, Laura McConwell | 09:03AM |
| 25 | on behalf of Phillip Kapp, and Mr. Perez is on the phone too. | 09:03AM |

| | |
|---|---|
| 1 | (Pause.) | 09:03AM |
| 2 | THE COURT:  All right. | 09:03AM |
| 3 | MR. HAN:  This is Ed Han for Hansen Helicopters. | 09:03AM |
| 4 | THE COURT:  Okay, and Mr. Nicolaysen, on behalf | 09:03AM |
| 5 | of Mr. Lujan, has Mr. Nicolaysen filed his pro hac vice in | 09:03AM |
| 6 | this case already? | 09:04AM |
| 7 | MR. NICOLAYSEN:  Yes, Your Honor, it was done two | 09:04AM |
| 8 | years ago. | 09:04AM |
| 9 | THE COURT:  Okay.  All right.  So he -- I haven't | 09:04AM |
| 10 | seen but I saw -- all right.  Thank you.  All right.  Let's go | 09:04AM |
| 11 | for the first matter before the Court is the amended motion | 09:04AM |
| 12 | for a hearing to address potential conflicts and what I don't | 09:04AM |
| 13 | need is I don't need a repeat of anything that's contained in | 09:04AM |
| 14 | the briefs. | 09:04AM |
| 15 | So beginning with the government, is there | 09:04AM |
| 16 | anything in addition to what's been filed that you wish the | 09:04AM |
| 17 | Court to be aware of? | 09:04AM |
| 18 | MR. LEON GUERRERO:  Yes, yes, Your Honor.  Thank | 09:04AM |
| 19 | you.  Stephen Leon Guerrero.  So really, in addition to, you | 09:04AM |
| 20 | know, the arguments that were raised in our filing, it has | 09:04AM |
| 21 | come to our attention that there is in fact a joint defense | 09:04AM |
| 22 | agreement amongst the defendants and that was something we | 09:04AM |
| 23 | weren't aware of or sure of when we initially filed this | 09:04AM |
| 24 | motion, and because we've been made aware of that, you know, | 09:04AM |
| 25 | we're simply asking the Court to make sure that there's no, | 09:05AM |

1   you know, potential for conflict of interest in any way to be
2   able to conduct an in camera review of that joint defense
3   agreement to determine if there's any potential for conflict
4   of interest.  You know, the big concern, you know, that the
5   government has is, we have Defendant Hansen who wasn't a
6   defendant in the initial indictment, um, is a defendant now,
7   and our concern is, if Defendant Hansen is paying the legal
8   fees of its co-defendants, you know, there is a potential for
9   conflict of interest if one of these defendants chooses to
10  want to cooperate and assist the government against its
11  co-defendants but can't because Defendant Hansen is paying its
12  attorneys fees.
13          So, you know, that is a conflict of interest that
14  the government is trying to avoid.  The other thing, too, is
15  you know, what we want to point out in addition is, you know,
16  we had attorney Martin who, you know, it's our position, was
17  representing Defendant Hansen and Defendant Walker at the same
18  time.  And so, you know, that was evident in the sense that
19  you know, now, you know, they have attorney Han who's now
20  representing Defendant Hansen.  But, you know, since the
21  indictment, you know, there's multiple layers of the potential
22  for conflict of interest to arise.
23          At one point, attorney McConwell, and this was
24  noted in our filing ECF 416, you know, we have attorney
25  McConwell that sought to deregister aircraft with the FAA.

1   And what's important to note is these aircraft that he's           09:06AM

2   looking to deregister belong to subsidiaries of Defendant          09:06AM

3   Hansen, again, who at least at one time was being represented      09:07AM

4   by attorney Martin.                                                09:07AM

5                   So, you know, we have that potential conflict of   09:07AM

6   interest where attorney McConwell, in essence, representing        09:07AM

7   these Defendant Hansen subsidiaries and trying to deregister       09:07AM

8   these aircraft with the FAA.  We also have Defendant Crowe and     09:07AM

9   Defendant Crowe either has a position and/or role with these       09:07AM

10  Vanuatu subsidiaries.  And the same thing with Defendant           09:07AM

11  Crowe, he sought to deregister aircraft with the FAA, again,       09:07AM

12  creating this potential layer of a conflict, not only with         09:07AM

13  himself, but again, attorney Martin and others.                    09:07AM

14                  So, you know, that -- you know, the big thing      09:07AM

15  with the government, Your Honor, bringing this motion is just      09:07AM

16  really having a hearing to ensure that, you know, we point out     09:07AM

17  the concerns that we have and, you know, the different             09:07AM

18  scenarios that we believe that there may be a potential            09:08AM

19  conflict of interest.  And, you know, ultimately, it will be       09:08AM

20  the Court to make that determination if a conflict or not even     09:08AM

21  just an actual conflict but the potential for a conflict           09:08AM

22  exists and that's merely what the government is just trying to     09:08AM

23  do, we have an obligation to bring it to the Court's attention     09:08AM

24  if we feel that there is a potential and that's what we did.       09:08AM

25  And so with those arguments, Your Honor, we submit, unless my      09:08AM

1  co-counsel, SAUSA Miller, has anything else she'd like to add.  09:08AM

2          MS. MILLER:  I do not.  I do not.  Thank you,  09:08AM

3  Your Honor.  Thank you, Stephen.  09:08AM

4          THE COURT:  All right.  Thank you.  Let me begin  09:08AM

5  with Mr. Walker's Counsel, Mr. Martin, you can go ahead and  09:08AM

6  address if you have addition to add other than what's been  09:08AM

7  filed?  09:08AM

8          MR. MARTIN:  Your Honor, I accidentally  09:08AM

9  disconnected myself, so when I picked up, Mr. Leon Guerrero  09:08AM

10  was talking about Hansen and attorney's fees being paid.  09:08AM

11  Anything before then, I didn't hear and I apologize.  I  09:09AM

12  accidentally disconnected, but let me just briefly say my  09:09AM

13  technology, Your Honor, is not that great.  Let me just --  09:09AM

14          THE COURT:  Well, let me just -- I guess, if I  09:09AM

15  can attempt to bring you up to speed, Counsel has just brought  09:09AM

16  up that there in fact exists a joint defense agreement and  09:09AM

17  then the obvious concern about the conflicts.  He referenced  09:09AM

18  Mr. McConwell may be representing subsidiaries of Hansen in  09:09AM

19  attempts at deregistration.  The Court has reviewed those  09:09AM

20  requests, the deregistrations that were filed as exhibits and  09:09AM

21  the conflicts that may be associated with that.  So that's  09:09AM

22  kind of where the government was.  Go ahead, you can then now  09:09AM

23  argue to the Court if you have anything you wish the Court to  09:09AM

24  be aware of other than what's been filed.  09:09AM

25          MR. MARTIN:  Your Honor, very briefly.  I  09:09AM

1   represent John Walker.  I don't represent Hansen, I don't          09:09AM

2   represent anyone else.  My loyalties are to John Walker.  He's      09:10AM

3   aware of that.  He's previously executed a waiver of conflict       09:10AM

4   of interest in this case as relation to all other defendants        09:10AM

5   and on behalf of Hansen, a waiver.  But there's -- I                09:10AM

6   understand -- I've been doing this for a long, long time.  I        09:10AM

7   understand what a conflict is.  And if the government wants to       09:10AM

8   make an offer to us for us to cooperate against them, I'm sure      09:10AM

9   willing to hear them.  I don't think Hansen is going to impact      09:10AM

10  my loyalty or duties to John Walker in any way shape or form        09:10AM

11  if that's a concern of theirs.  I will advise the Court that        09:10AM

12  we all do have a common defense.  Our common defense is we          09:10AM

13  haven't done anything wrong, but that doesn't create a              09:10AM

14  conflict of interest.  I think the issues are clearly set out       09:10AM

15  in the briefs filed by all the parties and I would stand on         09:10AM

16  that, Judge.                                                        09:10AM

17          THE COURT:  All right.  Thank you, Mr. Martin.              09:10AM

18  Let me -- go ahead, I'm sorry.                                      09:10AM

19          (Pause.)                                                    09:11AM

20          THE COURT:  We may have lost Mr. Martin again.              09:11AM

21          MR. MARTIN:  No, I'm here.  I'm here, Judge.  Can           09:11AM

22  you hear me?                                                        09:11AM

23          THE COURT:  Yes, okay.  Is that it, Mr. Martin?             09:11AM

24          MR. MARTIN:  That's it, and I think my Counsel --           09:11AM

25  my client's on the phone, if you need a waiver from him, he         09:11AM

1  can orally do it and if we need to do another one, we're happy  09:11AM

2  to do that.  09:11AM

3  　　　　　　THE COURT:  All right.  Let me just move up the  09:11AM

4  line.  Mr. Perez, anything on behalf of Mr. Reed?  09:11AM

5  　　　　　　MR. PEREZ:  Just briefly, Your Honor.  First, we  09:11AM

6  join in the opposition filed by co-defendants in Document 415  09:11AM

7  and 417.  I would just reiterate that my loyalty as Counsel is  09:11AM

8  to Defendant Reed only.  I would also point out that Mr. Reed  09:11AM

9  also signed a waiver which was submitted to the Court  09:11AM

10  previously.  09:11AM

11  　　　　　　I would just also submit that the government has  09:11AM

12  made no threshold showing of any conflict and I would also  09:11AM

13  just point out that the issue regarding the conflict based  09:11AM

14  upon payment of fees was raised previously by the government  09:11AM

15  addressed by this Court with Judge Manibusan and was denied  09:11AM

16  back then and this is the same issue that's being raised again  09:12AM

17  and I have nothing further to add other than that.  09:12AM

18  　　　　　　THE COURT:  All right.  Mr. Pole, anything to add  09:12AM

19  on behalf of Mr. Rogers?  09:12AM

20  　　　　　　MR. POLE:  Your Honor, I would just add that of  09:12AM

21  course, again, my loyalty is to Mr. Rogers and he's only on  09:12AM

22  one count.  So that even if there was a conflict for the other  09:12AM

23  defendants, which we don't see, it wouldn't be imputed to my  09:12AM

24  client, Your Honor.  09:12AM

25  　　　　　　THE COURT:  All right.  On behalf of Mr. Kapp,  09:12AM

1    Mr. McConwell or Tony?                                    09:12AM

2             MR. MCCONWELL:  This is Mr. McConwell, Your       09:12AM

3    Honor.  I join in that.  My loyalty is to Mr. Kapp.  He's also  09:12AM

4    waived any potential conflict.  I do not believe there's a   09:12AM

5    conflict with regard to the administrative matters we've been  09:12AM

6    dealing with, with regard to the FAA enforcement case or the   09:12AM

7    letter, or e-mail that you got from me to another Counsel in   09:12AM

8    this case urging them to go ahead and allow deregistration.  I   09:13AM

9    might point out to you they have blocked every deregistration   09:13AM

10   of aircraft in the registry right now and I think they have   09:13AM

11   something like 58 hold orders, so they're trying to block   09:13AM

12   deregistration by Hansen of the right to deregister their   09:13AM

13   aircraft.  But my client has no objection to the network that   09:13AM

14   I've done for the Vanuatu corporations and has executed the   09:13AM

15   waiver.                                                     09:13AM

16            THE COURT:  All right.  Thank you, Mr. McConwell.   09:13AM

17   On behalf of Mr. Crowe, Mr. Nicolaysen?                     09:13AM

18            MR. NICOLAYSEN:  Yes, thank you, Your Honor, Greg   09:13AM

19   Nicolaysen from Los Angeles speaking on behalf of Mr. Crowe   09:13AM

20   together with my co-Counsel David Lujan.  Your Honor, I ask   09:13AM

21   the Court to take note as our papers mention of the waiver of   09:13AM

22   conflicts filed on February 22nd of 2019, PACER            09:13AM

23   Document 2-0-4.  That waiver resolves any issue of any      09:14AM

24   potential conflict and there certainly was no actual conflict   09:14AM

25   that was being raised by the government in its initial filing   09:14AM

| | |
|---|---|
| 1 | back in 2018. And so looking at February of 2019 forward in | 09:14AM |
| 2 | time up to the present time, the government has not addressed | 09:14AM |
| 3 | any circumstance that would suggest that during the period | 09:14AM |
| 4 | subsequent to the filing of the conflict waivers, which Judge | 09:14AM |
| 5 | Manibusan accepted, there has been anything to raise divided | 09:14AM |
| 6 | loyalties or any other type of conflict in regard to the | 09:14AM |
| 7 | representation of Mr. Crowe. And in my view, that this is | 09:14AM |
| 8 | simply, as our papers argue, an effort to delay the trial. | 09:14AM |
| 9 | In regard to the filing of the amended motion, | 09:14AM |
| 10 | it's all in our papers, I won't repeat the argument here, but | 09:14AM |
| 11 | there is certainly no basis for any type of conflict inquiry | 09:15AM |
| 12 | or even for the filing of a supplemental waiver. There is no | 09:15AM |
| 13 | need for any additional waiver in regard to Mr. Crowe. | 09:15AM |
| 14 | THE COURT: All right. Thank you, | 09:15AM |
| 15 | Mr. Nicolaysen. I apologize for butchering your name but I | 09:15AM |
| 16 | think I got it now. | 09:15AM |
| 17 | MR. NICOLAYSEN: No, it's fine. | 09:15AM |
| 18 | THE COURT: Mr. Han, on behalf of Hansen | 09:15AM |
| 19 | Helicopters, anything -- because you're -- I guess the amended | 09:15AM |
| 20 | complaint that is now Hansen formally as a defendant. | 09:15AM |
| 21 | MR. HAN: Yes, Your Honor. Um, nothing else to | 09:15AM |
| 22 | add except the fact that I'd be loyal to the Hansen | 09:15AM |
| 23 | Helicopters, the corporation. | 09:15AM |
| 24 | THE COURT: All right. Thank you. | 09:15AM |
| 25 | MR. LEON GUERRERO: Your Honor, this is AUSA Leon | 09:15AM |

1    Guerrero, just a brief rebuttal.                          09:15AM

2              THE COURT:  Okay.  Go ahead.                    09:15AM

3              MR. LEON GUERRERO:  Now, I would say that the,  09:15AM

4    you know, the circumstances have changed and really those 09:15AM

5    waivers that were previously submitted to the Court are   09:15AM

6    outdated because at the time, Defendant Hansen was not a   09:16AM

7    co-defendant in the case.  So I would say that the         09:16AM

8    circumstances have changed and really those -- the initial 09:16AM

9    waivers that were provided to the Court really are no longer 09:16AM

10   pertinent and they're outdated, given the current superseding 09:16AM

11   indictment.                                               09:16AM

12             THE COURT:  All right.                          09:16AM

13             MR. NICOLAYSEN:  Your Honor, on behalf of       09:16AM

14   Mr. Crowe, I'd like to respond since it was in response to my 09:16AM

15   comment.  The government has an obligation to make a prima 09:16AM

16   facie showing that there is a reason to be concerned about a 09:16AM

17   serious potential for conflict or an actual conflict.  The 09:16AM

18   mere fact that the corporate entity was not a defendant at the 09:16AM

19   time the original conflict waivers were filed in February 2019 09:16AM

20   and we now have the corporate defendant in this case, that is 09:16AM

21   not a sufficient change of circumstance to suggest that there 09:16AM

22   are divided loyalties that would warrant further inquiry.  And 09:17AM

23   the government needs to demonstrate that there is some basis 09:17AM

24   for divided loyalties sufficient to conduct further inquiry in 09:17AM

25   camera or otherwise.  If the Court wishes to conduct further 09:17AM

```
 1   inquiry, I would recommend that that be done outside the          09:17AM
 2   government's presence and the Court can take oral waivers by       09:17AM
 3   phone at this hearing in an under-seal proceeding and we can       09:17AM
 4   have it resolved now.  I don't think it's necessary, but I         09:17AM
 5   think the defendants would be prepared to do that if the Court     09:17AM
 6   feels that the need has arisen for a supplemental waiver.          09:17AM
 7            THE COURT:  No, the Court has reviewed the                09:17AM
 8   defendants' briefs and also the arguments with respect to the      09:17AM
 9   nature of the initial investigation and the government's           09:17AM
10   awareness certainly since 2015 of the involvement of -- well,      09:17AM
11   the newest defendant, Hansen Helicopters, and that the            09:17AM
12   investigation really was -- was -- was geared towards them        09:17AM
13   from the beginning.                                                09:18AM
14            The Court, I think, just needs to remind the            09:18AM
15   lawyers to, you know, I'm sure the lawyers are aware of their      09:18AM
16   duty under Rule 1.8 and just make sure that you guys remain in     09:18AM
17   compliance with the rules and everybody's affirmatively stated     09:18AM
18   their loyalty to their specific client -- the insistence of a      09:18AM
19   defense agreement and whether or not compensation may or may       09:18AM
20   not be coming from -- from -- from persons other than their        09:18AM
21   client.  So let's just make sure we remain cognizant of that       09:18AM
22   and remain in compliance with that as well as 1.6 dealing with     09:18AM
23   confidentiality with respect to your individual client.  Okay?     09:18AM
24   I don't think the Court needs to be concerned with that.  The      09:18AM
25   second motion before the Court is -- so the Court will take        09:18AM
```

1   that matter under advisement and will issue an order as soon   09:18AM

2   as possible.   09:18AM

3                   The other motion before the Court is motion for   09:19AM

4   protective order by the government to schedule an inspection   09:19AM

5   and to prevent harassment of the witnesses.  Again, the Court   09:19AM

6   has reviewed all the documents that have been filed   09:19AM

7   previously.  Mr. Leon Guerrero or Ms. Martin [sic], is there   09:19AM

8   anything the government wishes to add with respect to that   09:19AM

9   motion?   09:19AM

10                  MS. MILLER:  Yes, Your Honor, this is Marie   09:19AM

11  Miller, can you hear me?   09:19AM

12                  THE COURT:  I'm sorry, Ms. Miller, I apologize.   09:19AM

13                  MS. MILLER:  Oh, that's okay.  Can you hear me   09:19AM

14  okay?   09:19AM

15                  MR. MARTIN:  Your Honor, may I interject   09:19AM

16  something first?   09:19AM

17                  THE COURT:  And who is this?   09:19AM

18                  MR. MARTIN:  This is Mr. Martin, Your Honor.  I   09:19AM

19  represent Mr. Walker.  I had a suggestion about this motion if   09:19AM

20  I might interject and then if you want to proceed, that's   09:19AM

21  fine.   09:19AM

22                  THE COURT:  Go ahead.   09:19AM

23                  MR. MARTIN:  That the government has also filed,   09:19AM

24  issued 62 subpoenas for the production of these same identical   09:19AM

25  helicopters addressing almost the same issues, and rather than   09:19AM

1   being repetitive, I was going to suggest we might set both      09:19AM

2   arguments for the same time at a later date, because the same   09:20AM

3   issues will virtually be addressed in those arguments that are  09:20AM

4   going to be addressed here.  And if the Court wants to          09:20AM

5   proceed, that's fine, but I wanted to make that suggestion.     09:20AM

6           THE COURT:  So Ms. Miller, what is the briefing         09:20AM

7   period -- I assume, Mr. Martin, you're referring to a motion    09:20AM

8   to quash the subpoenas then, there's a motion to quash that's   09:20AM

9   pending; is that correct?                                       09:20AM

10          MR. MARTIN:  That's correct, Your Honor.                09:20AM

11          THE COURT:  Does anybody know what the briefing         09:20AM

12  schedule is for that?  I don't know it off hand.                09:20AM

13          MS. MILLER:  Your Honor, there isn't anything           09:20AM

14  scheduled yet in terms of hearing that motion and the          09:20AM

15  government does not concede that the Rule 16 motion is the      09:20AM

16  same as the Rule 17 motion.  Those are two distinct procedural  09:20AM

17  processes and it is inappropriate to say that they should be    09:20AM

18  argued and heard at the same time.  The motion for a            09:20AM

19  protective order is a critical motion that should be heard and  09:20AM

20  ruled on by the Court as soon as possible and since we have     09:20AM

21  this hearing time and no one has before now recommended that    09:21AM

22  we move it and combine it with the Rule 17 motion and I         09:21AM

23  suggest we do go forward, Your Honor.                           09:21AM

24          THE COURT:  All right.  Go ahead, Ms. Miller,           09:21AM

25  then.  Mr. Martin, we'll hear the argument and go from there.   09:21AM

1    MS. MILLER:  Thank you, Your Honor.  So I know          09:21AM

2    Your Honor does not want to hear anything that has already   09:21AM

3    been previously filed.  I will however bring something to the   09:21AM

4    Court's attention that the Court may not be fully aware of:   09:21AM

5            Number one, the FAA has tried to inspect these     09:21AM

6    helicopters 29 times.  There are 29 letters that have gone   09:21AM

7    from the FAA to the defendants seeking repeatedly to inspect   09:21AM

8    these helicopters to ensure that they are safe and air-worthy.   09:21AM

9            One of those requests was on Helicopter N No.     09:21AM

10   9068-F, as in Frank.  And that particular aircraft was one   09:22AM

11   that crashed and killed a pilot on September 3rd of 2015.  And   09:22AM

12   the defendants continue to refuse to produce the helicopters   09:22AM

13   for inspection by the FAA for years, making numerous excuses   09:22AM

14   similar to the excuses that they made in response to the     09:22AM

15   government's motion here, that it would be too difficult to   09:22AM

16   pull the helicopters in, that it is too challenging, that is   09:22AM

17   it would cost them too much money, and our response is, too   09:22AM

18   bad.  The defendants actually are the ones who sought the   09:22AM

19   registration of all of these helicopters by the FAA.  And when   09:22AM

20   they sought that registration by the FAA, they certified under   09:22AM

21   penalty of perjury that they were seeking the registration to   09:22AM

22   comply with all of the FAA rules and conditions, and since   09:23AM

23   then, they have done anything but comply with those rules and   09:23AM

24   conditions.                                                   09:23AM

25            In this particular case, Your Honor, there has     09:23AM

1   been a plea agreement entered into by an FAA inspector who   09:23AM

2   admitted to his role in the honest services fraud and his role   09:23AM

3   in issuing 30 airworthiness certificates, 3-0, to these   09:23AM

4   defendants, without having actually conducted a proper   09:23AM

5   inspection of either the aircraft or the legitimate paperwork   09:23AM

6   tied to the aircraft.   09:23AM

7            Another thing that Your Honor hasn't seen in the   09:23AM

8   pleadings is that there have been nine deaths associated with   09:23AM

9   Hansen-owned helicopters, six serious injuries associated with   09:23AM

10  Hansen-owned and -operated helicopters.  We know that the   09:23AM

11  defendants have, "deregistered" and "reregistered" aircraft in   09:24AM

12  the Philippines before.   09:24AM

13           For example, Your Honor, one of the aircraft,   09:24AM

14  N369TG, Mr. Crowe said that Echo Air owned that aircraft.   09:24AM

15  Echo Air is one of the numerous Vanuatu corporations created   09:24AM

16  by the defendants for, according to them, insurance purposes.   09:24AM

17  And despite the fact that Mr. Crowe indicated to the FAA that   09:24AM

18  that aircraft is owned by Hansen outright and, therefore,   09:24AM

19  Hansen has the right to deregister it and to reregister it in   09:24AM

20  the Philippines, the FAA also has certification from Venezuela   09:24AM

21  that that identical aircraft is registered there by a third   09:24AM

22  party.  Every single helicopter was registered with the FAA.   09:24AM

23  And another example is N444GJ.  Every single request for   09:25AM

24  paperwork regarding that aircraft, even though it was   09:25AM

25  allegedly a Vanuatu-owned aircraft, the defendants asked that   09:25AM

1   all that paperwork be sent to Guam and this is something that           09:25AM

2   they've done over and over and over again.                              09:25AM

3           We have a letter that we produced to you, Your                  09:25AM

4   Honor, from the Philippines, indicating -- not only from the            09:25AM

5   Philippines by the way, Your Honor, from Vanuatu, from                  09:25AM

6   Palawan, confirming that the aircraft that the defendants               09:25AM

7   ostensively deregistered here to reregister there were never            09:25AM

8   in fact registered or their registrations were allowed to fail          09:25AM

9   in the case of the Philippines.                                         09:25AM

10          I submitted to the Court yesterday an exhibit                   09:25AM

11  just to show you and to provide you with an example of just             09:26AM

12  how outrageous the defendants' conduct is in relation to this           09:26AM

13  particular case.  The defendants submitted an exhibit in                09:26AM

14  support of their motion to dismiss that the defendants                  09:26AM

15  represented was an exhibit relating to aircraft N831FG.  But            09:26AM

16  what the defendants did was they only submitted to the Court            09:26AM

17  part of the file on N831FG.  They submitted an export letter            09:26AM

18  requesting deregistration of that aircraft.  They submitted a           09:26AM

19  deregistration confirmation.  They submitted a letter from the          09:26AM

20  FAA registering the aircraft after the export request and then          09:26AM

21  the registration from the FAA.  What they did not submit to             09:26AM

22  this Court was a statement of the whereabouts of that aircraft          09:26AM

23  showing that that aircraft never left Guam, despite the                 09:27AM

24  representations to the government that it was being exported.           09:27AM

25  What they didn't produce to the Court was a letter from                 09:27AM

1  Mr. Walker requesting the FAA registration after that aircraft            09:27AM
2  was supposedly exported but we know it was never exported, nor            09:27AM
3  did they produce to the Court another letter to the FAA,                  09:27AM
4  indicating that they were waiting for Vanuatu to confirm that             09:27AM
5  the helicopter was never registered there and then they also             09:27AM
6  didn't produce to the Court the Vanuatu confirmation that the            09:27AM
7  aircraft was never registered there.  We have letters from the           09:27AM
8  defendants going to the FAA over the last ten years, talking             09:27AM
9  about aircraft being exported, then saying, no, we never                 09:27AM
10 exported this aircraft, and meanwhile, the aircraft is in                09:27AM
11 registration limbo, but we know, based on the information we             09:28AM
12 received from the defendants, that these helicopters are                 09:28AM
13 making them millions of dollars a year, despite the fact that            09:28AM
14 they have not been properly inspected.                                   09:28AM

15         Finally, Your Honor, they want to ostensively                    09:28AM
16 remove the aircraft to the Philippines but we also produced a            09:28AM
17 document for you from the Philippines referring to the                   09:28AM
18 defendants' utter defiance of civil aviation law and disregard          09:28AM
19 of their responsibilities to the Philippines equivalent of the           09:28AM
20 FAA as they have here.                                                   09:28AM

21         Your Honor, you have the authority under Rule 16                 09:28AM
22 of the Federal Rules of Criminal Procedure to enter a                    09:28AM
23 protective order to allow the inspection of these helicopters           09:28AM
24 and also to assure that they are not deregistered and not               09:28AM
25 moved outside of the jurisdiction of the United States.  When           09:28AM

1   you consider what has happened in this case and how the                    09:29AM

2   defendants have repeatedly, repeatedly lied to the FAA and                 09:29AM

3   misrepresented and they are still using these helicopters to               09:29AM

4   transport pilots and mechanics, putting all these individuals              09:29AM

5   in danger, we ask this Court to exercise your jurisdiction                 09:29AM

6   under the rule and under the case law that we cited to grant               09:29AM

7   the motion for a protective order, to require the defendants               09:29AM

8   to finally bring these helicopters back to Guam for a proper               09:29AM

9   inspection by the government and to make them available to the             09:29AM

10  government.  And I don't wish to add anything else other than             09:29AM

11  what was already previously filed with the Court regarding the            09:29AM

12  witness tampering, any other issues.  Thank you, Your Honor.              09:29AM

13            THE COURT:  All right.  Let's -- Mr. Martin, on                 09:29AM

14  behalf of Mr. Walker?                                                     09:29AM

15            MR. MARTIN:  Yes, Your Honor, thank you very                    09:30AM

16  much.  Your Honor, I'm not sure that the government                       09:30AM

17  understands the purpose of Rule 16 discovery.  They asked for            09:30AM

18  discovery in this criminal case.  They don't represent the              09:30AM

19  Department of Transportation, they don't represent the FAA,             09:30AM

20  they don't represent the Federal Bureau of Investigation, they          09:30AM

21  don't represent Mr. Cislo, who's their star witness that they           09:30AM

22  talk about in this case.  Their one -- their alleged purpose            09:30AM

23  for this is for safety and airworthiness and they talk about           09:30AM

24  29 letters that have been sent ten years ago before I was even          09:30AM

25  involved in this case.  They admit they sent me one letter             09:30AM

1    that was attached to my motion.  I believe it was                09:30AM

2    December 12th saying, "Please tell us when we can inspect        09:30AM

3    these helicopters" and I responded to the letter, I asked them   09:30AM

4    to tell me what authority they had to do that.  I said if you    09:30AM

5    got a problem with it, we'll take it up with Judge Gatewood or   09:30AM

6    call me on the phone.  Neither one of those occurred.  They      09:31AM

7    didn't call me, we didn't take it up with Judge Gatewood.  I     09:31AM

8    figured they realized that they didn't have the authority to     09:31AM

9    do that, so we went on.                                          09:31AM

10           Secondly, they talk about the case law in support        09:31AM

11    of their motion for protective order.  They cited no case law,  09:31AM

12    Your Honor.  Rule 16 doesn't -- the way I read the rule,        09:31AM

13    doesn't give the government the authority to come in and        09:31AM

14    inspect evidence that -- for materials that -- in a case,       09:31AM

15    unless we're going to use it and I, in my motion said, we're    09:31AM

16    not going to produce any helicopters, we're not going to use    09:31AM

17    any helicopters at trial so we shouldn't -- we shouldn't        09:31AM

18    produce it.                                                     09:31AM

19           Thirdly, Your Honor, the thing that offends me           09:31AM

20    the most, and I use that word very lightly, is the personal     09:31AM

21    attacks on lawyers.  The government has misrepresented in       09:31AM

22    their motions things that my co-Counsel have been involved in,  09:31AM

23    in this case.  In particular, in reference to Mr. Cislo, they   09:32AM

24    make blatant allegations that Mr. McConwell confronted and      09:32AM

25    accosted Mr. Cislo, which did not occur.  The government        09:32AM

1    finally in January provided to us a 302 that's been identified    09:32AM

2    as FBI Hansen Document No. 046383, where during a proffer    09:32AM

3    session, the government alleged that Mr. McConwell confronted    09:32AM

4    him inside his hangar.  Mr. Cislo, and I'm reading from the    09:32AM

5    FBI 302 itself now, says "On Saturday, July 14th, a male    09:32AM

6    individual initiated contact with Cislo outside, outside of    09:32AM

7    his private hangar."  I made representations to the Court, as    09:32AM

8    an officer of the Court, quite honestly, what occurred by mere    09:32AM

9    happenstance on July 14th, and for them to make some type of    09:33AM

10   outrageous allegations that he tried to talk to him and he    09:33AM

11   tried to confront him about the case, he didn't intimidate him    09:33AM

12   at all, Your Honor.  Mr. Cislo doesn't say that.  Mr. Cislo    09:33AM

13   says -- even mentions that Mr. McConwell advised him that he    09:33AM

14   attempted to contact Cislo's attorney, they did not receive a    09:33AM

15   reply, consistent with exactly what I put in the motion, Your    09:33AM

16   Honor.  No Counsel in this case has done anything    09:33AM

17   inappropriate.  And I find it kind of offensive that the    09:33AM

18   government would allege that there's something done    09:33AM

19   inappropriate by any Counsel.  There's no basis for a    09:33AM

20   protective order.  We all know the rules of ethics in this    09:33AM

21   case just like we know the rules relating to a conflict of    09:33AM

22   interest.  I ask the Court to deny the government's motion,    09:33AM

23   Your Honor.    09:33AM

24            THE COURT:  All right.  Thank you, Mr. Martin.    09:33AM

25   Mr. Nicolaysen, anything to add?    09:33AM

1          MR. NICOLAYSEN:  Yes, Your Honor.  Thank you.      09:33AM

2     Rule 16 is a very narrow and specific rule in criminal      09:34AM

3     proceedings.  It deals with discovery by both sides.  The      09:34AM

4     issuance of protective orders provide restrictions under      09:34AM

5     Rule 16 that focus on the production of information by the      09:34AM

6     government typically by which parameters are being established      09:34AM

7     regarding the use of such evidence by the parties and we have      09:34AM

8     these protective orders in gang cases, identity theft cases,      09:34AM

9     etc., which is all about regulating how evidence is going to      09:34AM

10    be managed and used by the parties.      09:34AM

11         When the government seeks a protective order with      09:34AM

12    respect to the defense, that protective order under Rule 16      09:34AM

13    must be tailored to defense evidence.  That's not what's      09:34AM

14    happening here.  I'll give an example.  If the defendants      09:34AM

15    designated as a trial exhibit, a particular FAA-approved part      09:34AM

16    that was used on the helicopters during the time period of the      09:35AM

17    indictment, 2012 up to May 2018 when the first indictment was      09:35AM

18    filed, and we are going to be having testimony at trial      09:35AM

19    regarding that part, part of our presentation regarding      09:35AM

20    helicopters, then the Court would be well within its rights      09:35AM

21    and the government likewise, to direct the defense to make      09:35AM

22    that part available for inspection because that part is now      09:35AM

23    being designated by the defense as a trial exhibit.  Now      09:35AM

24    that's not happening -- the defense is not going to be      09:35AM

25    designating helicopters as defense exhibits.  That's just not      09:35AM

1    going to happen.  And therefore, the helicopters, which are    09:35AM

2    the subject of this motion, do not fall within the purview of    09:35AM

3    Rule 16.  They are not reciprocal discovery from the defense    09:35AM

4    to the government and the Court cannot issue any protective    09:35AM

5    orders with regard to those helicopters because those    09:36AM

6    helicopters simply don't fall within the parameters of Rule 16    09:36AM

7    and the government has made it clear in its filings, and as    09:36AM

8    recently as yesterday in Document 460, that their motion for    09:36AM

9    protective order is being brought under Rule 16.  It's    09:36AM

10   referred to as, "the government's Rule 16 motion."  So    09:36AM

11   therefore, the request by the government for (background    09:36AM

12   noise) to inspect the helicopters, order directing Hansen not    09:36AM

13   to transfer these helicopters as part of some sort of a    09:36AM

14   protective order, all of that has to be justified within the    09:36AM

15   very narrow and specific criteria of Rule 16, and because the    09:36AM

16   helicopters don't fall within Rule 16, they are not reciprocal    09:36AM

17   discovery, they are not going to be trial exhibits, this    09:36AM

18   Court, and I say this with respect, has no authority to order    09:36AM

19   any inspection.  And what the government is doing, is arguing    09:36AM

20   its case as if it were before an administrative body.  Marie    09:37AM

21   Miller is from the Department of Transportation, she's well    09:37AM

22   versed in FAA administrative procedures and the arguments that    09:37AM

23   she has presented here, which pertain to which she considers    09:37AM

24   safety issues, that there have been numerous requests to    09:37AM

25   inspect, that in her judgment have been ignored, and so on all    09:37AM

*Criminal Case No. 18-00010, USA v. Walker, et al.*

of that, goes to the issue of the FAA and the regulatory

agency having the authority to suspend or revoke

registrations, suspend or revoke airworthiness certificates.

That's the power of a regulatory agency, same thing with the

FDA over a drug company, the ACF over a gun manufacturer and

so on.  The arguments presented by Ms. Miller are suited for

the administrative environment where Hansen or whoever would

be, you know, deemed the appropriate owner of the helicopters,

would be subject to some administrative sanction for failing

to satisfy the safety and other obligations including making

the helicopters available for inspection.  That's an

administrative issue.  That has nothing at all to do with the

criminal proceeding or the narrow criteria under Rule 16.  And

I should emphasize that these helicopters, the vast majority

of the ones that's listed in the superseding indictment, which

for round numbers -- let's just use the number sixty, the vast

majority of these helicopters have valid registrations and

valid airworthiness certificates.  In fact, registrations have

three-year time tables and if Your Honor goes to www.faa.gov

and you have the superseding indictment in front of Your Honor

that has the table and all of these N numbers of the sixty

helicopters and you just start typing these N numbers into the

search engine on the home page, you'll get the profile of the

helicopters and you will see that the vast majority of them

have valid registrations.  Well, in fact, valid registrations

1  that expire either this year, 2021, even 2022.  That means the    09:39AM
2  FAA has been renewing these registrations during the period of    09:39AM
3  the investigation of this case which goes back at least to    09:39AM
4  2015 and earlier, and during the prosecution of this case.    09:39AM

5         So when the government complains, as it does,    09:39AM
6  that the helicopters are unsafe, and that we have refused    09:39AM
7  inspections, those administrative arguments should be directed    09:39AM
8  to the FAA as part of a claim that maybe the registrations    09:39AM
9  should not have been renewed, maybe they should be suspended    09:39AM
10  or revoked.  But this is a motion under Rule 16 and none of    09:39AM
11  the arguments the government has presented in its papers or    09:39AM
12  here today orally have any relevance whatsoever to Rule 16.    09:39AM

13         Let me just close by speaking about the    09:40AM
14  chronology of the superseding indictment.  If Your Honor goes    09:40AM
15  through the superseding indictment with an eye to the time    09:40AM
16  periods of the different counts, and if the Court please, I'll    09:40AM
17  be glad to do it, I have yellow highlighted it so I could    09:40AM
18  recite all the paragraphs in the superseding indictment.  Your    09:40AM
19  Honor will see that the government has consistently framed the    09:40AM
20  chronology of this prosecution from year 2012 up through May    09:40AM
21  of 2018, which is the doorstep of the filing of the initial    09:40AM
22  indictment, which was filed on May 31, 2018.    09:40AM
23         The superseding indictment, which was filed in    09:40AM
24  December 2019, a year and a half later, has one substantive    09:40AM
25  count that has to do with registrations that they claim was,    09:40AM

1    you know, improperly done on June 10th of 2018, a couple of

2    weeks after the first indictment.  But other than that one

3    ministerial charge, the entire superseding indictment is based

4    on the same chronology as the original indictment, which

5    doesn't go beyond May of 2018, and of course we are now in May

6    of 2020, two years later.

7            So the government cannot properly argue that

8    there is anything about the current helicopters that are

9    flying that has any relevance to the charges in the

10   indictment.  There is no allegation of continuity of

11   misconduct, or that the charged conspiracy are ongoing

12   conspiracies.  It'd be very different in a RICO case.  We've

13   all seen RICO cases where, let's just use a gang or a mafia

14   family where the defendants are on trial as members of a RICO

15   enterprise that is still in existence through the ongoing

16   prosecution and all the way up through a trial.  And so when

17   the mob family bosses in New York are on trial for being a

18   member of -- you know, being a leader of the Gambino family,

19   while they're in trial and while the prosecution is ongoing,

20   the RICO enterprise is considered to be still active.  And so

21   it's still ongoing criminal activities.  That's one of the key

22   centers between RICO and conspiracy.  Conspiracy, as we see in

23   this case, has bookends; it has a beginning and an end.  And

24   it's critical to recognize that the government is seeking to

25   have Court orders issued for inspections that the Court is not

1   authorized to issue, but the government is misunderstanding     09:42AM

2   that today's helicopters have nothing to do with the time       09:42AM

3   frame of the charge, because there's no allegation of any       09:42AM

4   continuity of misconduct, that there's any crime being          09:42AM

5   committed in 2020 that is relevant to the charge in this case,  09:42AM

6   unless the government is planning to supersede.  And if they     09:43AM

7   are, I ask the government through Your Honor, tell us now so     09:43AM

8   that we understand that; otherwise, based on chronology alone,  09:43AM

9   the concept of inspection is completely irrelevant because of   09:43AM

10  the two-year lapse between May of 2018 when the indictment       09:43AM

11  charges them and May of 2020, which is where we are today.       09:43AM

12  Those are my arguments to Your Honor and I would ask that the    09:43AM

13  government's motion be denied.                                   09:43AM

14          THE COURT:  All right.  Mr. Perez or                    09:43AM

15  Mr. McConwell on behalf of Defendant Kapp, anything to add?      09:43AM

16          MR. PEREZ:  Your Honor, I join in the opposition        09:43AM

17  of 422, 424, 428 and 434 and we rest on those as well as the    09:43AM

18  oral arguments presented by Mr. Martin and Mr. Nicolaysen.      09:43AM

19          MR. MCCONWELL:  This is Edward McConwell, Your          09:43AM

20  Honor, if I could respond a little bit here.  I could respond   09:43AM

21  to everything that Ms. Miller said and believe me, she's only   09:43AM

22  told you a fraction of the story in this matter.  There is      09:44AM

23  issues that she just brushed over and not given you the whole   09:44AM

24  story.                                                          09:44AM

25          One example you may not be aware of, but there's       09:44AM

1   a motion to dismiss on lack of jurisdiction that's pending   09:44AM

2   right now, it's been filed before the Court dealing with the   09:44AM

3   validity or invalidity of the airworthiness cert -- or the   09:44AM

4   registration certificates themselves.   09:44AM

5           MR. MILLER:  Your Honor, I'm sorry to interrupt   09:44AM

6   but I'm going to object to Mr. McConwell arguing anything   09:44AM

7   relating to the motion to dismiss.  I didn't ignore it.  We're   09:44AM

8   not here to argue it.   09:44AM

9           THE COURT:  All right.   09:44AM

10          MR. MCCONWELL:  I'm bringing the matter to the   09:44AM

11  Court's attention.  I wasn't going to argue it, but I do want   09:44AM

12  to give one example of something she did bring up that is very   09:44AM

13  important in this case.  She highlights 9068 Fox Trot.  Now,   09:44AM

14  that's an aircraft that had an accident in September of 2015   09:44AM

15  and the Court -- the FAA was aware as of that time and   09:45AM

16  actually back in April of 2015 of an issue with regard to the   09:45AM

17  validity or invalidity to the aircraft registrations.  They   09:45AM

18  acknowledged in their search warrant affidavit with regard to   09:45AM

19  the search warrant that was issued from Guam by Judge   09:45AM

20  Manibusan that 9068 Fox Trot was registered in the Philippines   09:45AM

21  and because of that, and because of international law, that   09:45AM

22  was an invalid registration, and at that point, absolutely   09:45AM

23  knew they did not have jurisdiction over that aircraft, yet   09:45AM

24  they plowed ahead and ignored the fact they didn't have   09:45AM

25  jurisdiction with regard to that aircraft and the   09:45AM

*Criminal Case No. 18-00010, USA v. Walker, et al.*

investigation that ensued from that, but it goes to the entire

line of Vanuatu corporations. They were totally aware of the

existence of them, the number and that they were foreign

corporations. That is implications that we'll be dealing with

later. I'm not going to go through everything she said.

There is a different story. There's more evidence that would

be -- would neutralize the thing that she said and we could

explain it to you, but it would take too long to do that.

But I do want to go back to the Mr. Cislo thing

at the airport. Mr. Cislo did not tell the truth to the FBI

agents and that was an accidental meeting that occurred. We

had no idea that he was going to even be there, didn't even

knew he was. But for the way that has been misrepresented to

the Court is very offensive and Mr. Martin's already spoke on

my behalf and that's all I'm going to say about that, but I

join in the pleadings that have been filed in this matter and

ask that the motion for protective order be denied.

And I do have my question for you, my

understanding, and I've been doing this for over 50 years,

that a lawyer has the ability to be able to interview

witnesses that are identified by the government or the

plaintiff or the adverse party. The government seems to say

that we can't do that and our clients are not supposed to by

their conditions of release, but the lawyers and we have

ethical standards we have to follow, that we've done nothing

1   wrong and there seems -- seems to say we did and I'd like to   09:47AM

2   know whether we are allowed to interview witnesses.  I will   09:47AM

3   tell you that I had one witness in this case say that he was   09:47AM

4   told not to talk to anybody, including their lawyers, and that   09:47AM

5   appeared to come from the government.   09:47AM

6          THE COURT:  All right.  Thank you, Mr. McConwell.   09:47AM

7   Mr. Pete Perez, Jr., on behalf Mr. Reed?  Anything?   09:47AM

8          MR. PEREZ:  No, Your Honor.   09:47AM

9          THE COURT:  All right.  Mr. Pole, on behalf of   09:47AM

10  anything -- Mr. Rogers, anything you wish to add?   09:47AM

11         MR. POLE:  Your Honor, just two things, one, we   09:47AM

12  continue to object and have objected to the government's   09:48AM

13  painting the defendants as being -- all defendants being in   09:48AM

14  control of the helicopters.  As we have pointed out and it's   09:48AM

15  as well clear from the superseding indictment, Mr. Randy   09:48AM

16  Rogers has no authority over those helicopters and has nothing   09:48AM

17  to do with those helicopters and shouldn't be painted with a   09:48AM

18  stroke as the government is trying to do here or in trial.   09:48AM

19         The only other thing I'd like to point out, Your   09:48AM

20  Honor, obviously while we join with all other defendants in   09:48AM

21  the motion, we're primarily concerned with the issue of the   09:48AM

22  right to interview witnesses and I just wanted to point out   09:48AM

23  that one of the cases that was cited was *United States versus*   09:48AM

24  *Brumel-Alvarez,* which is 991 F.2d 1452, and the reason I want   09:48AM

25  to point out is that was decided by the Ninth Circuit in 1993   09:48AM

1   that found a *Brady* violation where the government failed to 09:48AM
2   provide a DEA memo about one of their star witnesses on -- 09:49AM
3   asking for the truth and I just want to point out that even 09:49AM
4   though that was 1993 and therefore before the U.S. Supreme 09:49AM
5   Court in *Kyles v. Whitley*, 514 U.S. 419, which wasn't decided 09:49AM
6   until 1995, that case is still consistent with the U.S. 09:49AM
7   Supreme Court that said that issues of *Brady* must be provided 09:49AM
8   to defense Counsel and is not that it is grounds for 09:49AM
9   dismissal.  I think -- but we absolutely have a right to 09:49AM
10  interview witnesses to receive information and the government 09:49AM
11  provided nothing to suggest that even if this Court has the 09:49AM
12  right to sanction one defense attorney for alleged misconduct, 09:49AM
13  that it would have a right to sanction all defense attorneys 09:49AM
14  for the same misconduct and not allow for a proper defense, 09:49AM
15  that is, the interviewing of witnesses.  I have nothing 09:49AM
16  further to add, Your Honor. 09:49AM
17          THE COURT:  Thank you, Mr. Pole.  Mr. Han, 09:49AM
18  anything on behalf of Hansen Helicopters other than what's 09:50AM
19  been argued? 09:50AM
20          MR. HAN:  Nothing to add, Your Honor. 09:50AM
21          THE COURT:  All right.  Ms. Miller, briefly in 09:50AM
22  response to the arguments you heard from defense. 09:50AM
23          MS. MILLER:  Yes, Your Honor.  First of all, 09:50AM
24  Mr. Martin actually said the letters that the government sent 09:50AM
25  to us were ten years old, that's absolutely not true.  We have 09:50AM

been sending them letters as recently as last year requesting 09:50AM

inspection of these helicopters.  I have letters dated April 09:50AM

29, 2015, June 23, 2015, July 8, 2015, then we can 09:50AM

fast-forward to May 20, 2016, July 20, 2016.  Let's move 09:50AM

ahead, May 14, 2018, July 2nd, 2019.  I can go on and on, Your 09:50AM

Honor, but the point is that is absolutely a misstatement of 09:50AM

fact. 09:51AM

        The second thing is, Mr. Martin said that the 09:51AM

government doesn't understand Rule 16 and I would disagree 09:51AM

with that and I would also state the defense Counsel has 09:51AM

basically just kind of skirted over the explicit language of 09:51AM

Rule 16 which says that this Court has the authority to 09:51AM

require the defendant to permit inspection by the government 09:51AM

of tangible objects and it's not only those objects that the 09:51AM

defendant intends to use in its case in chief because, again, 09:51AM

a third misstatement by defense Counsel, which is that the 09:51AM

government cited -- case law, the government did cite 09:51AM

substantial case law to support its position, including case 09:51AM

law that indicates that if the defendant intends to 09:51AM

cross-examine any of the government's witnesses in a criminal 09:51AM

case regarding evidence, that the government is entitled to 09:52AM

view that evidence.  It is not a violation of the defendant's 09:52AM

Fifth Amendment privilege against self-incrimination and it is 09:52AM

not necessary that the defendants use that evidence in their 09:52AM

case in chief.  And all that case law was cited by the 09:52AM

government to the Court, so I won't repeat it, but it is just 09:52AM
completely ridiculous for defense to make that statement that 09:52AM
no case law was cited. 09:52AM

The fourth thing, Your Honor, is I understand 09:52AM
very well the distinction between administrative proceeding 09:52AM
and a civil proceeding.  As a matter of fact, it's going to be 09:52AM
really interesting to hear what the defendants have to say 09:52AM
when they turn around and argue that administrative 09:52AM
proceedings are the most meaningful thing for the Court to 09:52AM
consider, but in this case, yes, I'm an attorney with the DOT 09:52AM
OIG.  I'm also a former federal prosecutor with extensive 09:52AM
experience in conspiracy cases. 09:53AM

And the fifth issue that I'd like to address as 09:53AM
an experienced federal prosecutor is, a conspiracy is not 09:53AM
completed until its abandoned.  We don't have to supersede in 09:53AM
order to argue, and we will argue, so all of the defense 09:53AM
Counsel need to be put on notice right now, it's the 09:53AM
government's contention that this conspiracy has not ended, 09:53AM
the conspiracy has continued. 09:53AM

As a matter of fact, immediately after the 09:53AM
indictment, the first indictment in this case, there was 09:53AM
another accident by one of these helicopters that the 09:53AM
defendants owned and that the defendants have refused to allow 09:53AM
to be inspected. 09:53AM

The sixth thing I want to address is the Cislo 09:53AM

|   |   |   |
|---|---|---|
| 1 | issue.  This actually relates to the conflict of interest | 09:53AM |
| 2 | motion that was filed, Your Honor.  If Mr. McConwell is | 09:53AM |
| 3 | calling Mr. Cislo a liar and saying that he did not disclose | 09:53AM |
| 4 | their interaction with each other truthfully to the FBI | 09:54AM |
| 5 | agent, then again, I want to put Mr. McConwell on notice that | 09:54AM |
| 6 | he will be called as a witness to testify under oath about | 09:54AM |
| 7 | where that meeting took place, when that meeting took place, | 09:54AM |
| 8 | what was said during the course of that meeting, because Mr. | 09:54AM |
| 9 | Cislo has confirmed for us that Mr. McConwell specifically | 09:54AM |
| 10 | told him that he should not be talking to him, he knew he | 09:54AM |
| 11 | shouldn't be talking to him, but he was still talking with him | 09:54AM |
| 12 | and Mr. Cislo said he felt intimidated. | 09:54AM |
| 13 | So to address the last point that Mr. Rogers' | 09:54AM |
| 14 | Counsel brought up, the government isn't indicating in any way | 09:54AM |
| 15 | shape or form that the defense cannot talk to witnesses or | 09:54AM |
| 16 | understand what they're going to say.  What we are indicating | 09:54AM |
| 17 | is that it is inappropriate and a violation of law to | 09:54AM |
| 18 | intimidate witnesses, number one, and number two, to offer to | 09:54AM |
| 19 | pay attorney's fees for witnesses because that is unduly | 09:54AM |
| 20 | influencing a witness and it goes into tampering with | 09:55AM |
| 21 | witnesses and that is what we object to.  I have nothing | 09:55AM |
| 22 | further to say, Your Honor.  Thank you. | 09:55AM |
| 23 | MR. NICOLAYSEN:  Your Honor, I'll be happy to | 09:55AM |
| 24 | respond.  This is Greg Nicolaysen on behalf of Defendant -- | 09:55AM |
| 25 | MS. MILLER:  No, Your Honor, I'm going to object | 09:55AM |

1    to Counsel responding.  The way these arguments go is, we          09:55AM

2    filed the motion --                                                09:55AM

3              THE COURT:  That's fine.  Ms. Miller, that's all         09:55AM

4    right.  All right.  The Court has heard enough.  The Court         09:55AM

5    will take the matters under advisement, will issue its            09:55AM

6    recommendation and decision as soon as possible.                   09:55AM

7              MS. MILLER:  Thank you, Your Honor.                      09:55AM

8              THE COURT:  Thank you everybody.                         09:55AM

9              (Proceedings concluded at 9:55 a.m.)                     09:55AM

10                            * * *

11   ---------------------------------------------

12              CERTIFICATE OF OFFICIAL REPORTER

13

14   CITY OF HAGATNA            )
                                )  ss.
15   TERRITORY OF GUAM          )

16

17        I, Veronica F. Flores, Official Court Reporter for

18   the United States District Court of Guam, do hereby certify

19   the foregoing pages, 1 to 38, to be a true and correct

20   transcript of the proceedings held in the above-entitled

21   matter to the best of my ability.

22        Dated this 11th day of May 2020.

23

24                       /s/Veronica F. Flores
                         Veronica F. Flores
25