SHAWN N. ANDERSON
United States Attorney
STEPHEN F. LEON GUERRERO
Assistant United States Attorney
MARIE L. MILLER
Special Assistant United States Attorney
SAMANTHA R. MILLER
Special Assistant United States Attorney
Sirena Plaza, Suite 500
108 Hernan Cortez Avenue
Hagåtña, Guam 96910
PHONE: (671) 472-7332
FAX: (671) 472-7215

Attorneys for the United States of America

IN THE UNITED STATES DISTRICT COURT

FOR THE TERRITORY OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA, | CRIMINAL CASE NO. 18-00010 |
| Plaintiff, | |
| vs. | **UNITED STATES' TRIAL BRIEF** |
| JOHN D. WALKER,<br>   aka JON WALKER,<br>MARVIN R. REED,<br>KENNETH R. CROWE,<br>PHILLIP T. KAPP,<br>RANDALL ROGERS, and<br>HANSEN HELICOPTERS, INC. | **Judge: Hon. Frances M. Tydingco-Gatewood, Chief Judge**<br><br>**Trial: March 7, 2022** |
| Defendants. | |

COMES NOW, the United States of America, by and through undersigned its counsel, and herein respectfully submits this trial brief in accordance with the Court's Sixth Amended Trial Scheduling Order (ECF No. 1036) and General Order 16-0002.

United States' Trial Brief

## TABLE OF CONTENTS

I.    CASE POSTURE ................................................................................................ 1

II.   BASIC FACTS .................................................................................................. 2

    A.   The Defendants Fraudulently Purchased and Assembled Helicopters from Destroyed, Substantially Damaged, and Foreign Helicopters, Using Counterfeit Parts, Uncertificated Airmen, and Falsely Identifying such Helicopters as Legitimate with False Data Identification and Registration Information ........................................................ 2

    B.   The Defendants Continued to Lie to the FAA About Helicopter Identities and Conditions in Order to Obtain and Maintain Registration and Airworthiness Certificates. ................. 6

    C.   The Defendants Hired Mechanics and Pilots Who Did Not Have FAA Certification to Operate FAA Registered Helicopters Because They Asked No Questions and Were Paid Less. ................................................................................................................. 7

    D.   The Defendants Took Extraordinary, Deliberate Steps to Avoid Mandatory Inspection and Oversight ........................................................................................................ 8

       1.   The Defendants Bribed U.S. and International Aviation Safety Inspectors. ............... 8

       2.   The Defendants Lied to the FAA and Others About the Status and Location of Their Aircraft. ......................................................................................................... 9

    E.   The Defendants' Practice To Buy and Install Unapproved, Counterfeit Helicopter Parts Resulted in Serious and Fatal Helicopter Crashes ................................................ 11

    F.   The Defendants Obstructed NTSB Accident Investigations. ................................. 12

    G.   The Defendants Lied to Their Tuna Boat Clients About the Legitimacy, Airworthiness, and Regulatory Compliance of Their Helicopters. ............................................... 13

    H.   The Defendants Laundered Money Made from Tuna Boat Contracts Through a Web of Shell Companies and On and Off-Shore Bank Accounts. ..................................... 13

III. CHARGES AND RELATED ISSUES ............................................................. 14

    A.   Conspiracy to Defraud the FAA and NTSB ...................................................... 14

    B.   Destruction, Alteration, or Falsification of Records .......................................... 15

    C.   False Statement ............................................................................................. 16

    D.   Aircraft Parts Fraud ...................................................................................... 17

       1.   Count 8: Falsification or Concealment of a Material Fact ............................... 17

       2.   Count 9: Materially Fraudulent Representation ............................................. 18

       3.   Count 10: Conspiracy to Make or Use a Materially False Writing. .................. 19

       4.   Count 11: Sale, Trade, or Installation of an Aircraft Part by Means of a Fraudulent Representation ............................................................................................ 20

       5.   Count 12: Falsification or Concealment of a Material Fact ............................. 20

       6.   Count 13: Sale, Trade, or Installation of an Aircraft Part by Means of a Fraudulent Representation ............................................................................................ 21

       7.   Special Issues. ............................................................................................ 21

          a.   Facts Relevant for Sentencing. ............................................................. 21

          b.   As a Corporation, Hansen May Be Found Criminally Liable. .................... 22

    E.   Aircraft Registration Violations ...................................................................... 23

|  | 1. | Defendants Employed Scores of Uncertificated Mechanics and Pilots to Fix and Fly Hansen Helicopters. ................................................................. 23 |

1. Defendants Employed Scores of Uncertificated Mechanics and Pilots to Fix and Fly Hansen Helicopters. ................................................................. 23

2. Defendants Displayed False Markings of Aircraft Nationality and/or Registration... 24

F. Honest Services Fraud ................................................................................. 25

G. Conspiracy to Commit Wire Fraud ............................................................. 28

H. Wire Fraud ................................................................................................... 29

I. Money Laundering ....................................................................................... 30

J. Forfeiture Is a Matter for the Court ............................................................. 31

IV. ANTICIPATED EVIDENCE .................................................................................. 32

A. Witnesses ..................................................................................................... 32

1. Former and Current Hansen Employees. ........................................... 32

2. Other Fact Witnesses. ......................................................................... 32

3. Records Custodians. ............................................................................ 33

4. Federal Agents and Employees. .......................................................... 33

5. Expert Witnesses. ................................................................................ 33

B. Documents. ................................................................................................... 34

V. EVIDENTIARY AND OTHER TRIAL ISSUES ..................................................... 34

A. Authentication .............................................................................................. 34

1. Generally. .............................................................................................. 34

2. Duplicates. ............................................................................................ 36

3. Foundation for Still Photographs/Video Recording ........................... 36

4. Evidence Obtained from Civil Aviation Authorities of New Zealand, Philippines, and Federated States of Micronesia via MLAT. ............................................ 37

B. Evidence "Inextricably Intertwined" With the Scheme to Defraud. ............ 37

C. Defendants' Own Statements. ...................................................................... 38

1. Admissions of a Defendant are Admissible When Offered by the Government but Defendants Cannot Introduce Their Own Hearsay Statements. ............................. 38

2. *Bruton* Does Not Bar Introduction of Defendants' Statements. ........ 39

D. Summary Exhibits. ....................................................................................... 39

E. Incriminating Evidence Outside the Statute of Limitations. ........................ 41

F. Prior Rulings on Motions in *Limine*. ......................................................... 42

G. Presentation of Evidence. ............................................................................ 42

H. Spousal and Marital Privileges. ................................................................... 42

I. International Law Governs Helicopters Operating Over the "High Seas." ..... 44

J. Statements of Non-Testifying Agents .......................................................... 46

K. Unrelated Instances of Non-Criminal Conduct ........................................... 46

L. Explanation of Investigation ........................................................................ 47

VI. Conclusion .............................................................................................................. 48

iv

# **TABLE OF AUTHORITIES**

**CASES**

*Crawford v. Washington,* 541 U.S. 36 (2004) ............................................................. 46

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993)........................ 34

*Dennis v. United States*, 384 U.S. 855 (1966) ........................................................... 15

*Exec. 1801 LLC v. Eagle W. Ins. Co.*, No. 3:18-CV-00580-SB,

    2021 WL 5114665 (D. Or. June 11, 2021) ............................................................ 22

*Hammerschmidt v. United States*, 265 U.S. 182 (1924) ............................................. 15

*Kungys v. United States*, 485 U.S. 759 (1988)........................................................... 17

*Libretti v. United States*, 516 U.S. 29 (1995)............................................................. 31

*Neder v. United States*, 527 U.S. 1 (1999) ................................................................. 30

*New York Cent. & Hudson R.R. Co. v. United States,* 212 U.S. 481 (1909) ............. 22

*Phillips v. United States*, 356 F.2d 297 (9th Cir. 1965).............................................. 30

*Phiropoulous v. State*, 908 S.W. 3d 712 (Mo.App.E.D. 1995)................................... 36

*Salinas v. United States*, 522 U.S. 52 (1997).............................................................. 29

*Skilling v. United States*, 561 U.S. 368 (2010) ........................................................... 27

*Smith v. United States*, 568 U.S. 106 (2013) .............................................................. 15

*Sudberry v. Arizona*, 463 F. App'x 629 (9th Cir. 2011) ............................................ 22

*Suthterland v. Koster*, No. 4:10CV1611MLM,

    2011 WL 2784108 (E.D.Mo., 2011)................................................................ 36, 37

*Trammel v. United States*, 445 U.S. 40 (1980) ........................................................... 42

*TRE Aviation Administration v. Federal Aviation Administration,*

    686 Fed. Appx. 487 (9th Cir. 2017).................................................................... 4

*United States Parker*, 553 F.3d 1309 (10th Cir. 2009)............................................... 20

*United States v. Aleman*, 592 F.2d 881 (5th Cir. 1979).............................................. 38

*United States v. Al-Imam*, No. 17-cr-00213 (CRC),

    2019 WL 2358365 (D.D.C. June 4, 2019) ........................................................... 37

*United States v. Andreadis*, 366 F.2d 423 (2d Cir 1966) ........................................... 30

*United States v. Anekwu*, 695 F.3d 967 (9th Cir. 2012).............................................. 40

*United States v. Atkinson*, No. 99-30180, 99-30181,

2000 WL 1015905 (9th Cir. July 21, 2000)........................................................ 23

*United States v. Aubrey*, 800 F.3d 1115, 1130 (9th Cir. 2015)............................ 40

*United States v. Barela*, 973 F.2d 852 (10th Cir. 1992) .................................... 47

*United States v. Barry*, 814 F.2d 1400 (9th Cir. 1987)...................................... 47

*United States v. Berger,* 224 F.3d 107 (2d Cir. 2000) ...................................... 15

*United States v. Beusch,* 596 F.2d 871 (9th Cir. 1979)..................................... 22

*United States v. Biaggi*, 909 F.2d 662 (2d Cir. 1990)....................................... 27

*United States v. Black*, 767 F.2d 1334 (9th Cir. 1985) .................................... 35

*United States v. Bolzer*, 556 F.2d 948 (9th Cir. 1977)...................................... 43

*United States v. Brannon*, 616 F.2d 413 (9th Cir. 1980) .................................. 36

*United States v. Burkholder*, 816 F.3d 607 (10th Cir. 2016) ............................. 22

*United States v. Calabrese*, 825 F.2d 1342 (9th Cir. 1987)............................... 28

*United States v. Clark*, 986 F.2d 65 (4th Cir. 1993) ........................................ 37

*United States v. Cromer*, 389 F.3d 662 (6th Cir. 2004)..................................... 47

*United States v. Dess*, 34 F.3d 838 (9th Cir. 1994) ......................................... 30

*United States v. F.J. Vollmer & Co., Inc.*, 1 F.3d 1511 (7th Cir. 1993) ............... 17

*United States v. Fernandez*, 839 F.2d 639 (9th Cir. 1988) ............................... 39

*United States v. Gadson*, 763 F.3d 1189 (9th Cir. 2014).................................. 35

*United States v. Garrido*, 713 F.3d 985 (9th Cir. 2013).................................... 26

*United States v. Gaudin*, 515 U.S. 506 (1995)................................................ 17

*United States v. Gay*, 967 F.2d 322 (9th Cir. 1992)......................................... 30

*United States v. Gil*, 58 F.3d 1414 (9th Cir. 1995)........................................... 46

*United States v. Gonzalez*, 906 F.3d 784 (9th Cir. 2018) ................................. 16

*United States v. Grimm*, 568 F.2d 1136 (5th Cir. 1978).................................... 47

*United States v. Hedgcorth*, 873 F.2d 1307 (9th Cir. 1989) .............................. 47

*United States v. Hilton Hotels,* 467 F. 2d 1000 (9th Cir. 1972),

   *cert denied*, 409 U.S. 1125, (Mem.) (1973)................................................. 22

*United States v. Holm*, 550 F.2d 568 (9th Cir. 1977) ...................................... 25

*United States v. Hubbard*, 96 F.3d 1223 (9th Cir. 1996)................................... 29

*United States v. Jackson*, 33 F.3d 866 (7th Cir. 1994) .................................... 15

*United States v. Jones*, 425 F.2d 1048 (9th Cir. 1970) .................................... 30

*United States v. Kincaid-Chauncey*, 556 F.3d 923 (9th Cir. 2009) ............................................ 27

*United States v. Liu*, 731 F.3d 982 (9th Cir. 2013) ..................................................................... 14

*United States v. Lloyd*, 807 F.3d 1128 (9th Cir. 2015) ............................................................... 24

*United States v. Lowe*, 767 F.2d 1052 (4th Cir. 1985) ............................................................... 47

*United States v. Manion*, 339 F.3d 1153 (9th Cir. 2003) ........................................................... 25

*United States v. Marashi*, 913 F.2d 724 (9th Cir. 1990) ...................................................... 42, 43

*United States v. Martin*, 897 F.2d 1368 (6th Cir. 1990) ............................................................ 47

*United States v. Matlock*, 415 U.S. 164 (1974) ......................................................................... 38

*United States v. Monroe*, 552 F.2d 860 (9th Cir. 1997) ............................................................ 29

*United States v. Moran*, 759 F.2d 777 (9th Cir. 1985) ............................................................. 15

*United States v. Musacchio*, 968 F.2d 782 (9th Cir. 1991) ....................................................... 41

*United States v. Ortega*, 203 F.3d 675 (9th Cir. 2000) ............................................................. 39

*United States v. Ortiz*, 776 F.3d 1042 (9th Cir. 2015) ............................................................... 35

*United States v. Osorio*, No. 88-5523, 1988 WL 83427 (4th Cir. July 26, 1988) ..................... 37

*United States v. Pacheco*, 912 F.2d 297 (9th Cir. 1990) ........................................................... 25

*United States v. Peterson*, 140 F.3d 819 (9th Cir. 1998) ........................................................... 39

*United States v. Peterson*, 538 F.3d 1064 (9th Cir. 2008) ......................................................... 17

*United States v. Qaoud*, 777 F.2d 1105 (6th Cir. 1985) ............................................................ 47

*United States v. Rasheed*, 663 F.2d 843 (9th Cir. 1981) ........................................................... 30

*United States v. Reilly*, 33 F.3d 1396 (3d Cir. 1994) ................................................................ 35

*United States v. Reyes*, 577 F.3d 1069 (9th Cir. 2009) ............................................................. 24

*United States v. Ripinsky*, 129 F.3d 518, 1440 (9th Cir. 1997) ................................................ 38

*United States v. Rizk*, 660 F.3d 1125 (9th Cir. 2011) ............................................................... 40

*United States v. Roach*, 28 F.3d 729 (8th Cir. 1994) ................................................................ 36

*United States v. Russell*, 703 F.2d 1243 (11th Cir. 1983) ......................................................... 47

*United States v. Santillan*, 243 F.3d 1125 (9th Cir. 2001) ........................................................ 14

*United States v. Sawyer*, 85 F.3d 713 (1st Cir. 1996) ............................................................... 27

*United States v. Sayakhom*, 186 F.3d 928 (9th Cir. 1999) ........................................................ 38

*United States v. Shabani*, 513 U.S. 10 (1994) .......................................................................... 29

*United States v. Smith*, 831 F.3d 1207 (9th Cir. 2016) ............................................................. 16

*United States v. Soliman*, 813 F.2d 277 (9th Cir. 1987) ........................................................... 38

v

*United States v. Solorio*, 669 F.3d 943 (9th Cir. 2012) ........................................ 46

*United States v. Standish*, 3 F.3d 1207 (8th Cir. 1993) ........................................ 37

*United States v. Stewart*, 420 F.3d 1007 (9th Cir. 2005) ...................................... 36

*United States v. Strickland*, 935 F.2d 822 (7th Cir. 1991) ................................... 37

*United States v. Strobehn*, 421 F.3d 1017 (9th Cir. 2005) .................................... 43

*United States v. Tank*, 200 F.3d 627, 630 (9th Cir. 2000) ..................................... 35

*United States v. Tarallo*, 380 F.3d 1174 (9th Cir. 2004) ...................................... 24

*United States v. Tenerelli*, 614 F.3d 764 (8th Cir. 2010) ..................................... 47

*United States v. Tin Yat Chin*, 371 F.3d 31 (2d Cir. 2004) .................................. 35

*United States v. Turman*, 122 F.3d 1167 (9th Cir. 1997) ...................................... 14

*United States v. Vizcarra-Martinez*, 66 F.3d 1006 (9th Cir. 1995) ........................ 38

*United States v. Western Titanium, Inc.,* No. 08CR4229-JLS,

    2010 WL 4659646 (S.D.Cal. Oct. 15, 2010) ............................................ 23

*United States v. White*, 974 F.2d 1135 (9th Cir. 1992) ......................................... 43

*United States v. Williams*, 441 F.3d 716 (9th Cir. 2006) ...................................... 26

*United States v. Woods*, 335 F.3d 993 (9th Cir. 2003) ......................................... 30

*United States v. Woods*, 943 F.2d 1048 (9th Cir. 1991) ....................................... 40

*United States v. Woodward*, 149 F.3d 46 (1st Cir. 1998) ...................................... 28

*United States v. Yermian*, 468 U.S. 63 (1984) .................................................... 17

*United States v. Yin*, 935 F.2d 990, 996 (9th Cir. 1991) ....................................... 35

*United States. v. Edwards*, 69 F.3d 419 (10th Cir. 1995) ..................................... 20

*Unites States v. Vo*, 413 F.3d 1010 (9th Cir. 2005) ......................................... 42, 43

*Whitfield v. United States*, 543 U.S. 209 (2005) .................................................. 29

**STATUTES**

18 U.S.C § 1365 ................................................................................................. 13

18 U.S.C. § 10 .............................................................................................. 19, 36

18 U.S.C. § 1035 ............................................................................................... 27

18 U.S.C. § 1346 .......................................................................................... 28, 33

18 U.S.C. § 1349 ............................................................................................... 33

18 U.S.C. § 1519 .......................................................................................... 16, 17

18 U.S.C. § 1957 .......................................................................................... 35, 36

18 U.S.C. § 2 ................................................................................................ 33

18 U.S.C. § 31(a)(2) ..................................................................................... 13

18 U.S.C. § 3238 .......................................................................................... 48

18 U.S.C. § 3505 .......................................................................................... 43

18 U.S.C. § 38 ................................................................................... 21, 22, 23

49 U.S.C. § 40102 ........................................................................................ 26

49 U.S.C. § 46306(b) ....................................................................... 25, 26, 27

**OTHER AUTHORITIES**

*Developments in the Law -- Corporate Crime: Regulating Corporate Behavior Through*

    *Criminal Sanctions*, 92 Harv. L. Rev. 1227 (1979) ................................. 25

FAA Order 8100.19 ..................................................................................... 3, 4

H.R. Rep. No. 87-748 (1961) ........................................................................ 30

ICAO Annex 2 .............................................................................................. 52

ICAO Annex 7 .............................................................................................. 52

Ninth Cir. Model Crim. Jury Instructions No. 3.17 ..................................... 29

Ninth Cir. Model Crim. Jury Instructions No. 5.7 ....................................... 15

Ninth Cir. Model Crim. Jury Instructions No. 8.110 ................................... 13

Ninth Cir. Model Crim. Jury Instructions No. 8.123 ................................... 29

Ninth Cir. Model Crim. Jury Instructions No. 8.123A ................................ 36

Ninth Cir. Model Crim. Jury Instructions No. 8.124 (2021 edition) ........... 33

Ninth Cir. Model Crim. Jury Instructions No. 8.131A (2021 Edition) ........ 17

Ninth Cir. Model Crim. Jury Instructions No. 8.150 (2021 edition) ........... 35

Ninth Cir. Model Crim. Jury Instructions No. 8.20 (2019 edition) ............. 32

Ninth Cir. Model Crim. Jury Instructions No. 8.20, comment (2019 edition) ........... 21

Ninth Cir. Model Crim. Jury Instructions No. 8.21 (2020 Edition) ............ 15

Ninth Cir. Model Crim. Jury Instructions No. 8.73 (2021 edition) ............. 18

*SUPs Program Plan*, FAA SUPs Task Force Report (Oct. 6, 1995) ........... 11

**RULES**

Fed. R. Crim. P. 611(a) ................................................................................ 42

Fed. R. Crim. P. 32.2 .................................................................................... 31

Fed. R. Evid. 902(11) ......................................................................................... 37

Fed. R. Evid. 1006 ...................................................................................... 39, 40

Fed. R. Evid. 404(b) ......................................................................................... 38

Fed. R. Evid. 501 ............................................................................................. 42

Fed. R. Evid. 611(a) ......................................................................................... 40

Fed. R. Evid. 702 ............................................................................................. 33

Fed. R. Evid. 801 ...................................................................................... 38, 39

Fed. R. Evid. 803 ............................................................................................. 46

Fed. R. Evid. 901 ............................................................................................. 36

Fed. R. Evid. 901(a) ......................................................................................... 34

Fed. R. Evid. § 1001(2) .................................................................................... 36

## REGULATIONS

14 C.F.R. § 21.335 ........................................................................................... 28

14 C.F.R. § 27.602 ........................................................................................... 11

14 C.F.R. § 29.602 ........................................................................................... 11

14 C.F.R. § 45.13 ............................................................................................... 4

14 C.F.R. § 45.23 ............................................................................................. 27

14 C.F.R. § 45.33 ............................................................................................. 28

14 C.F.R. § 47.41 ............................................................................................... 3

14 C.F.R. Part 61 ............................................................................................. 26

14 C.F.R. Part 65 ............................................................................................. 26

49 C.F.R. § 830.5 ............................................................................................. 13

## I.   CASE POSTURE

On May 30, 2018, a grand jury returned an indictment against defendants John D. Walker, Marvin R. Reed, Kenneth R. Crowe, Phillip T. Kapp, Randall Rogers, and Hansen Helicopters, Inc. ("Hansen"), charging these persons or entities with twenty-three counts, including criminal conspiracy, money laundering, falsification offenses, and several types of fraud, including honest services fraud.  ECF No. 1.

On December 12, 2019, a grand jury returned a superseding indictment ("SI"), charging these Defendants with eighty-one total counts, including additional conspiracies, aircraft parts fraud, honest services fraud, bribery, and a number of criminal aircraft registration violations, such as employing a mechanic without a Federal Aviation Administration ("FAA") certificate.  ECF No. 369.

On January 8, 2021, a grand jury returned a second superseding indictment ("SSI"), charging the same Defendants with 110 counts, including additional criminal aircraft registration violations; the SSI also added two additional defendants, Spares, Inc. ("Spares") and its owner, Frank Litkei ("Litkei") (ECF No. 862); however, in July 2021, Litkei died and the Court dismissed all charges against him.  ECF No. 1009.  Counsel for Litkei and Spares represented that Litkei was sole shareholder of Spares and, as such, the status of Spares' solvency and operations remain unclear in the wake of Litkei's death.  *See* ECF No. 1198.  As a result, the Government agreed to sever Spares to ascertain the viability of it as a criminal defendant without delaying the case.

The United States voluntarily dismissed count 76 (employing a mechanic without an FAA certificate) and the Court dismissed count 98 (bribery).  On January 7, 2022, this Court ordered the trials of Defendant Rogers and Reed severed from the trial against Defendants Walker, Crowe, Kapp, and Hansen.  ECF No. 1239.  Since Rogers and Reed are not solely named in any one count, their severance does not materially impact the issues for trial, scheduled to commence March 7.

## II.    BASIC FACTS

Beginning as early as 1992 and continuing through the present, the Defendants named in the indictments engaged in a comprehensive scheme to defraud the Government as to the safety and regulatory compliance of their helicopters. Each of the over 100 criminal counts arise directly from this over-arching scheme to defraud.

**A. The Defendants Fraudulently Purchased and Assembled Helicopters from Destroyed, Substantially Damaged, and Foreign Helicopters, Using Counterfeit Parts, Uncertificated Airmen, and Falsely Identifying such Helicopters as Legitimate with False Data Identification and Registration Information.**

The Defendants accomplished their conspiracy to defraud the FAA and National Transportation Safety Board ("NTSB") through the following:

(a)    buying previously destroyed, scrapped, or otherwise deemed un-airworthy helicopters to use as purported legitimate civil aircraft for profit, despite failing to properly repair those aircraft;

(b)    falsifying or concealing material facts related to those helicopters to avoid detection by the FAA and NTSB;

(c)    making materially fraudulent statements to the FAA to obtain U.S. registrations and Airworthiness Certificates;

(d)    refusing and avoiding inspections of the FAA registered helicopters;

(e)    deregistering then re-registering aircraft with the FAA and other civil aviation authorities, including the Philippine and New Zealand Aviation authorities, to avoid inspection, oversight, and detection of fraud;

(f)    operating aircraft that were not registered in any jurisdiction.

(g)    switching data plates from their associated aircraft or aircraft parts to non-associated aircraft or aircraft parts;

2

(h)     hiring uncertified mechanics and pilots to work on and operate the aircraft, thereby exacerbating the unsafe operation of damaged helicopters;

(i)     manufacturing, shipping, purchasing, and utilizing counterfeit parts;

(j)     concealing accidents and incidents from the NTSB and FAA;

(k)     bribing a FAA inspector;

(l)     bribing inspectors from a foreign aviation authority;

(m)     taking other measures to conceal material information from the Government (including tampering with N number markings on the helicopters);

(n)     using shell companies to conceal the true fraudulent actors in the scheme and to avoid criminal culpability; and

(o)     taking other measures to avoid detection and criminal liability through delaying proceedings related to the availability of helicopters subject to the indictment to be inspected.

Defendants' scheme  included illegally rebuilding helicopters by replacing all primary structures — using counterfeit and cannibalized parts — and placing  false identification (a.k.a. "data plates") and registration information (a.k.a. "tail numbers") on them.  The scheme continued as defendants presented false paperwork to the FAA, bribed a FAA safety inspector for false airworthiness certificates, used uncertificated pilots and mechanics to operate these unsafe helicopters - a dangerous and illegal practice linked to nine deaths, 16 serious bodily injuries, and dozens of accidents of which the government is aware, – and as the defendants concealed numerous additional accidents.

A helicopter is "totally destroyed or scrapped" when the aircraft's primary structure is so damaged it would be impracticable to return the aircraft to an airworthy condition.  *See* 14 C.F.R. § 47.41(a)(2); FAA Order 8100.19, Ch. 4, 2-3. The FAA is clear that a helicopter is only eligible for repair if it maintains at least one primary structure. *See* FAA Order 8100.19, Ch. 4, 3.b.

Importantly, replacement of all primary structures of the aircraft is not a repair but a rebuild, and only a manufacturer may rebuild a helicopter.

Additionally, because helicopters are aircraft, it is imperative the helicopter itself, and every part used on it, are traceable. Every repair and replacement of parts must be recorded in a maintenance log. Further, all helicopters have unique identification numbers, just like cars have unique vehicle identification numbers. All helicopters have registration numbers, just like all cars have license plates. The helicopter identification number is associated with its registration number so its owner is known, just as a car's VIN number is associated with its license plate to identify its owner. Taking a data identification plate from the original helicopter, or the registration number assigned to the particular helicopter, and placing these unique identifiers on another helicopter is strictly prohibited by law. 14 C.F.R. § 45.13(e). FAA Order 8100.19, Chapter 4, 3.c.

Defendants and their lawyers know this: in the *TRE Aviation Administration v. Federal Aviation Administration,* 686 Fed. Appx. 487 (9th Cir. 2017), case, attorney Edward A. McConwell, employing David E. Cann as an expert, unsuccessfully argued his client merely repaired an aircraft. The FAA Administrator, Administrative Law Judge, NTSB Board, and ultimately the Ninth Circuit all agreed "the work performed on the helicopter cannot be characterized as maintenance…or repair," rejecting McConwell's argument and Cann's opinions. Yet McConwell uses the same expert to make the identical argument here. For the same reasons, these arguments necessarily fail.

The evidence of defendants' intentional fraud on the FAA and NTSB is overwhelming, and includes multiple admissions by the defendants, such as:

- (illegally rebuilding helicopters) "We're only having Randy rebuild enough airframes so we can have them wired up and have on hand so when airframes come in that are too badly corroded to turn around quickly, we can swap the components and turn the machine around quickly" email from Crowe to Walker copying Kapp (G-0148);

4

- (illegally switching registration numbers) "Another thought on having a bunch of fuselages around your shop with no numbers. ...we can slap Philippine #'s on them," email from Kapp to Rogers (G-0315, G-0676, G-0933);

- (falsifying repair paperwork) "Also, do you need a 337 on 500LA. I can do one for 1985, as 9183F if I knew where the aircraft was at that date. What are some others you need?" email from Rogers to Kapp (G-0671);

- (buying destroyed helicopters with no intention of properly repairing) "I know the donkeys didn't take pics of the smashed side...and it hasn't made it onto the MD's hit list of 'suspected destroyed aircraft,'" email from Kapp to Rogers (G-0319, G0434, G-0940);

- (falsifying bills of sale) "if you need a BOS let me know," email between Rogers and Kapp (G-0315, G0676, G-0933);

- (Vanuatu companies shell corporations) "All of the companies are owned by Jon...," Crowe to potential purchaser of company (G-0302, G-0928, G-1476);

- (Intent to defraud the FAA) "[The New Zealand] registration was to circumvent the FAA," Crowe to potential purchaser of company (G-0302-2, G-0928-2, G-1476-2).

There are substantially more admissions as well as other direct and indirect evidence of guilt.

The intentional and insidious effect of defendants' fraud was to exacerbate the risk of accident, injury, and death of persons in or within the vicinity of these Frankenstein helicopters. It also resulted in the inability of the FAA and NTSB to perform its critical mission – aviation safety. Defendants made accountability related to the safe operation of the helicopters, the proper maintenance of the helicopters, and the traceability of critical helicopter parts impossible. Why? The oldest motivation in the world - a greedy desire to put as much of the in excess of $21million per year for leasing these machines in their pockets.

The helicopter known as N243d is one of many blatant and egregious examples of defendants' *modus operandi*. James G. Marson originally owned N243d. He testified (during a Fed.R.Cr.R.15 deposition) that N243d was totally destroyed in a serious crash in which Mr. Marson sustained severe injuries in 2004. Following his crash, Marson sold N243d as scrap to a third party associate of defendant Rogers. In 2007, before defendants acquired the scrapped N243d

5

from a third party, they started using its registration number on another aircraft. Then in 2011, defendants bought the scrap that was N243d and its paperwork from a dealer named Schults (who will testify for the government in this case). Defendants then forged Marson's signature on a bill of sale, misrepresenting to the FAA that: (a) the aircraft was "erroneously reported as destroyed" and (b) that they purchased N243d and all of its maintenance records directly from Marson. Defendants falsely claimed they "repaired" N243d. The government can prove beyond any reasonable doubt that at one particular point in time there were at least three different helicopters with the registration number N243d and the correlating data identification plate.

**B. The Defendants Continued to Lie to the FAA About Helicopter Identities and Conditions in Order to Obtain and Maintain Registration and Airworthiness Certificates.**

The defendants continued their lies to the FAA with respect to the identities and conditions of helicopters in order to obtain FAA certificates necessary to fly those aircraft. For example, Crowe *regularly* forged bill of sale records submitted to the FAA when registering helicopters. Indeed, in a 2014 email, Defendant Crowe sent Defendant Walker a blank bill of sale to sign, stating that in order to register aircraft N1156X, they were "going to need a bill of sale from J&P Apparel to Plymouth Copters Inc. to BRAVO AIR INC." (G-0842-1).

Similarly, defendants routinely represented to the FAA that original copies of airworthiness certificates had been "lost at sea" in order to obtain duplicates, which the Defendants then used illegally – operating a veritable helicopter "chop shop." For example, following a fatal crash in 2015, Crowe directed Hansen employees to notarize documents claiming that helicopter with the registration number N9068F crashed at sea along with its original registration and airworthiness certificates. In fact, the defendants were in possession of both the registration and airworthiness certificates when the government exercised its search and seizure of defendants' premises.

The Defendants not only lied to obtain certificates, they also lied to the FAA to retain them.

6

Defendants regularly made false misrepresentations in entries, certifications, documents, and records submitted to the FAA. For example, countless emails reveal that defendants made false logbook entries, made false entries on maintenance and repair forms, and took other measures to conceal the background, maintenance histories, and airworthiness of their helicopters. In fact, Hansen Helicopters did not require pilots or mechanics to enter maintenance information in logbooks at all; instead, only the defendants had access to the limited "logbooks." For example:

- On June 24, 2012: Kapp created a maintenance logbook entry for N243d indicating completion of a hard landing inspection[1]. (G-0822-24, G-1606, G-0820, G-1533-87, G-1533-107, G-0821, G-1599-13, G-0827-6, G-1651-2, G-0250-13, G-0253-11, G-1569-5). No such inspection was ever actually performed.

- On November 29, 2015, Kapp emailed Rogers stating that he was "filling out the 337 for this previous repair…It's been over 10 years since this aircraft …was damaged in an accident. At some point in time it got sent off for repair and the paperwork never caught up to it." Rogers responded by brainstorming ways in which they could falsify a paper trail for that aircraft, despite the required knowledge to do so. (G-0671).

- On December 4, 2015, Reed emailed Kapp, describing false information he intended to put on FAA Form 337 concerning N910WC: "910WC will be here Saturday morning, I will start an undated 337 on it ASAP. I need the owner, or should I use Steve's company? Do you have logs and data plate or are they still on it. I believe we can clean this all up this year and make your life so you can have sex without thinking about the FAA ☹ ☹." (G-0315, G-0676, G-0933).

### C. The Defendants Hired Mechanics and Pilots Who Did Not Have FAA Certification to Operate FAA Registered Helicopters Because They Asked No Questions and Were Paid Less.

Defendants intentionally hired foreign pilots and mechanics who had no FAA certifications, because those pilots and mechanics, paid significantly less, asked no questions. Defendants' business records reflect the hiring of uncertified pilots and mechanics "[b]etween on or about 1998 to present," knowing they lacked the required certification to operate FAA

---

[1] A "hard landing" occurs when the aircraft/helicopter lands damaging its components and rendering them non-airworthy, which, in turn, makes the aircraft/helicopter unsafe to operate and fly.

7

registered helicopters. Defendants required their uncertified pilots and mechanics to sign contracts with one of their many shell companies, and then had them sign second contracts indicating they were certificated even though they were not.

Defendants' emails confirm they knew their hiring practices were illegal. For example, in March 2013, Reed received an email summarizing a meeting he had with a FAA representative:

> The FAA rep. for Majuro . . . brought up a point that Tom Bustos only has a Philippine pilot lic. And the fact he was piloting a US reg. aircraft. His only concern was if the accident was to happen within Majuros (any) jurisdiction this would be a major problem. (G-0618).

Further, the testimony of another pilot, Mr. Marinho, demonstrates the defendants' knowledge of his lack of FAA certification, the requirement he execute two contracts, one with the defendants admitting he was not certificated, and another to show the tuna boat companies indicating he was FAA certificated, and the operation of three different FAA registered helicopters. (G-0318, G-1058, G-0976, G-1798, G-1122, G-1102, G-1123, G-0348, G-0959).

**D. The Defendants Took Extraordinary, Deliberate Steps to Avoid Mandatory Inspection and Oversight**

1. <u>The Defendants Bribed U.S. and International Aviation Safety Inspectors.</u>

Timothy Cislo was the FAA aviation safety inspector responsible for overseeing defendants. Over several years, the defendants bribed Cislo to neglect his duties and rubberstamp—without any inspection or diligence——the FAA airworthiness certificates the defendants needed to continue operating. Defendants offered Cislo a number of "gifts" ranging from lunch to airplane rides, to "money and hookers," culminating in the delivery of a $20,000 yellow Taylorcraft airplane to Cislo in June 2014. After receiving the airplane, Cislo sent an email to Defendants stating he had "a sign-fest" of airworthiness certificates, despite that he did not inspect all of those aircraft and "did not look through 100% of the aircraft records" for the

8

certificate renewals. (G-0282-4, G-1868-4).

Cislo will testify to the bribe in exchange for his honest services fraud, and that he "coached" the defendants on their false logbook entries. Indeed, their "lost at sea" guise to obtain replacements certificates was on Cislo's recommendation. Cislo further instructed the defendants to place forged logbook entries on stickers so that Cislo could later fraudulently insert the entries into the aircraft logbook pages, which would be "probably be more believable." After being confronted with these criminal acts, on March 28, 2018, Cislo pled guilty to three counts of honest services fraud. The defendants are charged with those honest services fraud counts in this case.

In addition to bribing Cislo, the defendants' email traffic reveals they also regularly bribed foreign safety inspectors. For example, Crowe emailed Reed in July 2013 (G-0420):

> I forgot to ask you about the flipping Filipinos. Do you want me to arrange for the airworthiness guys to come out-or are we going to trigger the nigger? Oh, and we hired a nigger, Scott's son-in-law…it's been hilarious! I don't have a problem with it as long as Harry does all the paperwork and leaps through the flaming hoops. I'm done leaping through hoops for the fucking flips. If it were up to me we'd send data plates and N-Numbers to the RPC's and a $2K bonus to the pilots and mechanics to keep their mouths shut!

Later that afternoon, Crowe wrote as follows to a different Hansen employee, Miguel Lero (a.k.a Harry) (G-0377, G-0981):

> Harry: Do these guys want to do a real inspection or do they just want the cash? I, personally, am not jumping through anymore flaming hoops for these lying, stealing fuckheads. If we bring them out here, you get to appease them and do the paperwork – I'm not doing it again. I have enough US registrations to change the entire flipping Filipino fleet back to US and I have recommended to Jon that we should do just that because we can truck anyone the entire flipping Philippines anymore.

2. <u>The Defendants Lied to the FAA and Others About the Status and Location of Their Aircraft.</u>

In addition to bribing safety inspectors, the Defendants also avoided mandatory inspections by lying to FAA inspectors about the status and location of their aircraft. Defendants lied by saying

9

helicopters were at sea when they were not, and Defendants did not have their helicopters fly into Guam when they knew FAA inspectors were present. Defendants instructed pilots, mechanics, and tuna boat crewmembers to hide or otherwise conceal or delay the offloading of Hansen aircraft. The jury will see evidence of repeated false representations to the FAA that the helicopters were exported, when in fact they were never exported out of the United States.

Defendants also used proceedings in a foreign court to delay inspection. *See* ECF Nos. 536, 542, 1127 & 1127-5, 1128, 1133. A Federated States of Micronesia (FSM) court found that Dave's Helicopters—one of defendants' shell companies—delayed and prevented one of defendants' crashed helicopters from being shipped to the United States for use as evidence in this trial (by requesting a stay pending appeal of an already failed attempt to do so):

> Walker, the true real party in interest, will, of course, be able to contest whether a serious offense was committed against the laws of a foreign state – the U.S. – in the courts of that foreign state and argue there about whether the helicopter is evidence of the commission of that alleged serious offense.
>
> Dave's purported concerns about its helicopter's fate on Guam and whether it will ever get its helicopter back are misplaced. Dave's cannot show any irreparable harm.
>
> . . .
>
> At best, Dave's assertion, that it would take the FSM appellate court only "a few months" from the start of the appeal to conclude its proceedings in the matter, is overly, if not exceedingly, optimistic or outright misleading. Those "few months" are already almost gone. The court can only note that the major reason, if not the sole reason, for Dave's to seek a stay or injunction appears to be delay - which is an improper purpose. Dave's has delayed matters at every opportunity.
>
> . . .
>
> Although delay may not be particularly in Dave's interest, it is definitely in the best interest of Dave's principal - Walker, the true real party in interest - to delay the helicopter's shipment to Guam until after Walker's criminal trial is over.

*See* ECF No. 1127-5 (Order Denying Injunction or Stay, *In the Matter of the Search and Seizure of Wrecked/Damaged Helicopter v. Dave's Helicopter Service, Inc.*, Search Warrant No. 2019-

10

700 (FSM Supreme Court, Trial Division, Pohnpei)).  Defendants' willingness to mislead courts and judges is in line with its blatant deception tactics with regulatory authorities, both U.S. and foreign.

### E.  The Defendants' Practice to Buy and Install Unapproved, Counterfeit Helicopter Parts Resulted in Serious and Fatal Helicopter Crashes

One of the most significant and dangerous aspects of the Defendants' scheme involved the installation of counterfeit parts on their helicopters. Counterfeit aircraft parts, often referred to in the industry as "Suspected Unapproved Parts" (SUPs), are created when an individual or entity— without FAA parts manufacturing approval—deliberately misrepresents that its manufactured parts were designed and produced under an FAA-approved system or method. *See SUPs Program Plan*, FAA SUPs Task Force Report (Oct. 6, 1995).

Of particular concern was Defendants' use of unapproved and counterfeit Tail Rotor Pitch Change Links (TRPCLs). TRPCLs are a "critical" aircraft part, "the failure of which could have a catastrophic effect upon the rotorcraft." 14 C.F.R. § 27.602 (critical parts for normal category rotorcraft); 14 C.F.R. § 29.602 (critical parts for transport category rotorcraft).  Defendants bought counterfeit, unapproved TRPCLs from Spares; installed those counterfeit TRPCLs on their helicopters, and misrepresented on internal documents, invoices, and purchase orders that those parts were legitimate part "369A1807-9F".

Indeed, defendants' records show that they never purchased legitimate 369A1807-9F TRPCLs from an industry-approved parts manufacturer.  Defendants' employees were directed by the Defendants to buy and install counterfeit, unapproved parts on helicopters for the purpose of reducing costs, knowing those parts could not be verified as safe.  Pilots and mechanics were required to "jerry-rig" the TRPCLs themselves, despite no training, experience, or certification in aircraft maintenance and the unacceptable safety risks associated with such practices.  These

11

practices included placing foreign material through the bearing holes in the TRPCL to maintain the needed friction, a practice even the defendants' own expert found appalling.

Furthermore, government experts and the original equipment manufacturer all confirm the TRPCLs are counterfeit. These parts were painted black to mimic the coating of an approved part, while in fact lacking the epoxy top coat necessary to protect the part from corrosion. The bearings, necessary for the safe operation of the TRPCL, were repeatedly improperly installed. The counterfeit TRPCLs lack individualized serial numbers, date of manufacture, identification of manufacturer, and were packaged and shipped in batches (rather than individually), in violation of applicable packing and shipping safety standards.

Post-installation images of counterfeit TRPLs show visible damage and degradation, and that the TRPCLs were attached to other rotor parts with zip ties and/or pieces of cloth fabric. When a TRPCL fails, a helicopter loses autorotation control, begins to spin in circles, which almost inevitably results in a crash. TRPCL failure is consistent with a number of the documented Hansen helicopter crashes, including those where Hansen pilots were injured and killed. The government's accident reconstruction expert will testify that a number of accidents, injuries and death were proximately[2] caused by this counterfeit part. This was one of many counterfeit parts purchased and used by defendants.

**F. The Defendants Obstructed NTSB Accident Investigations.**

Defendants failed to report helicopter crashes to the NTSB, as is required by federal law. 49 C.F.R. § 830.5 ("The operator of any civil aircraft…shall *immediately* and by the most expeditious means available, notify the nearest [NTSB] office."). For example, Hansen helicopter

---

[2] A proximate cause is one that played a substantial part in bringing about the malfunction or failure, so that the malfunction or failure was the direct result of a reasonably probable consequence.
**Source**: 18 U.S.C. § 38; 18 U.S.C. § 31(a)(2) and (7); 18 U.S.C § 1365(h)(4). Ninth Cir. Model Crim. Jury Instructions No. 8.110.

12

N501SU crashed in May 2018. Defendants instructed their pilot to prevent others from taking photos or documenting the crashed helicopter, and the pilot altered the crashed helicopter and removed its blades.

Similarly, defendants attempted to cover up details surrounding the crash of helicopter N805LA. Crowe instructed the pilot of N805LA, who sustained injuries in the crash, to let the helicopter sink into the ocean. Even though the defendants did report this particular accident to the NTSB, they falsely reported that the pilot did not sustain any injuries.

### G. The Defendants Lied to Their Tuna Boat Clients About the Legitimacy, Airworthiness, and Regulatory Compliance of Their Helicopters.

Defendants lied to tuna boat lessees about the airworthiness and regulatory compliance of helicopters leased from them. They misrepresented to tuna boat companies that the helicopters were legitimately registered with the FAA, airworthy, and that the pilots and mechanics were FAA certificated. FAA registered helicopters and certificated pilots and mechanics commanded higher prices due to the reputational benefits and assurances of safety associated with FAA oversight.

### H. The Defendants Laundered Money Made from Tuna Boat Contracts Through a Web of Shell Companies and On and Off-Shore Bank Accounts.

The proceeds of defendants' unlawful scheme were laundered using shell companies and various on- and off-shore bank accounts. Defendants' internal accounting documents and bank statements demonstrate defendants created more than forty shell companies for the purposes of avoiding taxes and insurance premiums, and to conceal their illegal proceeds. Each of the shell companies was owned and controlled by defendants. For example, in response to a question about the relationship between Wilma's Flight Services and Hansen, Crowe wrote as follows:

It is all Hansen Helicopters: all of the aircraft are owned wholly by Hansen and it's [sic] subsidiary companies and all leases/contracts are basically with Hansen, Jon and [unknown individual] were trying to spread out the liability through the

13

forming of the other companies. Everything is controlled by Hansen/Jon, they are synonymous. (G-0302-2, G-0928-2, G-1476-2).

Indeed, defendants' records show that the vast majority of money garnered from tuna boat leases was funneled into accounts controlled by defendants; specifically, six electronic wire transactions, among many others, were performed involving criminally derived property of a value greater $10,000 in December of 2016, among many others. *See, e.g.,* ECF No. 862 ¶ 139. The IRS special agent and expert forensic accountant will attribute in excess of $400million to the fraud, and show how the funds wend their way through various shells to defendants.

## III. CHARGES AND RELATED ISSUES

### A. Conspiracy to Defraud the FAA and NTSB

Count One[3] charges all Defendants with engaging in a conspiracy to defraud the United States under 18 U.S.C. § 371. The Government must prove the following elements beyond a reasonable doubt:

(1) Between 1992 and the present, there was an agreement between two or more persons to defraud the United States by obstructing the lawful functions of the FAA and/or NTSB by deceitful or dishonest means;

(2) The Defendants became a member of the conspiracy knowing[4] of at least one of its objects and intending to help accomplish it; and

---

[3] Unless otherwise stated, all references to "counts" are to those found in the Second Superseding Indictment.

[4] An act is done knowingly if the defendant is aware of the act and does not [act] [fail to act] through ignorance, mistake, or accident. [The government is not required to prove that the defendant knew that [his] [her] acts or omissions were unlawful.] You may consider evidence of the defendant's words, acts, or omissions, along with all the other evidence, in deciding whether the defendant acted knowingly. Ninth Cir. Model Crim. Jury Instructions No. 5.7. Comment: The second sentence of this instruction should not be given when an element of the offense requires the government to prove that the defendant knew that what the defendant did was unlawful. *See United States v. Liu*, 731 F.3d 982, 994-95 (9th Cir. 2013) (criminal copyright infringement); *United States v. Santillan*, 243 F.3d 1125, 1129 (9th Cir. 2001) (violation of Lacey Act); *United States v. Turman*, 122 F.3d 1167, 1169 (9th Cir. 1997) (money laundering case).

14

(3) One of the members of the conspiracy performed at least one overt act on or after 1992 for the purpose of carrying out the conspiracy.

Ninth Cir. Model Crim. Jury Instructions No. 8.21 (2020 Edition); *Smith v. United States*, 568 U.S. 106, 111 (2013) .

The statute applies to "any conspiracy for the purpose of impairing, obstructing, or defeating the lawful function of any department of Government," including the FAA and the NTSB. *See United States v. Jerkins*, 871 F.2d 598, 602 (6th Cir. 1989) (quoting *Dennis v. United States*, 384 U.S. 855, 861 (1966)). Thus, it is a violation of 18 U.S.C. § 371 to conspire to defraud by taking actions that impede, impair, obstruct, or defeat enforcement by the FAA and/or the NTSB of aviation laws. *See United States v. Moran*, 759 F.2d 777, 785 (9th Cir. 1985) ; *see also United States v. Berger,* 224 F.3d 107, 114-15 (2d Cir. 2000) (finding the defendants participated in a single conspiracy to defraud various federal agencies through diverse fraudulent acts).

The government need not charge or prove that a defendant agreed to commit or actually did commit a substantive offense. *United States v. Jackson*, 33 F.3d 866, 871 (7th Cir. 1994). The conspiracies prosecuted under this section include acts against the United States that "interfere with or obstruct one of its lawful governmental functions by deceit, craft or trickery." *Hammerschmidt v. United States*, 265 U.S. 182, 188 (1924); *United States v. Caldwell*, 989 F.2d 1056 (9th Cir. 1993).

**B. Destruction, Alteration, or Falsification of Records**

Counts 2-4 charge Defendant Crowe, and Count 5 charges Defendant Kapp, with unlawful destruction, alteration, or falsification of records under 18 U.S.C. § 1519. To prove unlawful destruction, alteration, or falsification of records, the Government must prove the following elements beyond a reasonable doubt:

(1) The defendant knowingly altered, destroyed, concealed or falsified a record, document

15

or tangible object; and

    (2) The defendant acted with the intent to impede, obstruct or influence an actual or contemplated investigation of a matter within the jurisdiction of any department or agency of the United States.

Ninth Cir. Model Crim. Jury Instructions No. 8.131A (2021 Edition).

The government need not prove that the defendant's sole or even primary intention was to obstruct or influence an actual or contemplated investigation, as long as the government proves beyond a reasonable doubt that one of the defendant's intentions was to do so; an intention that must be substantial. *See United States v. Smith*, 831 F.3d 1207, 1218 (9th Cir. 2016). To sustain a conviction under § 1519, it is enough for the government to prove that the defendant intended to obstruct the investigation; the defendant need not know that the matter in question falls within the jurisdiction of a federal department or agency. *United States v. Gonzalez*, 906 F.3d 784, 794 (9th Cir. 2018).

## C. False Statement

Counts 6 and 7 charge Defendant Crowe with making a false statement in violation of 18 U.S.C. § 1001. To prove false statement, the Government must prove the following elements beyond a reasonable doubt:

    (1) The defendant made a false statement or used a writing that contained a false statement;

    (2) The false statement or writing was made in a matter within the jurisdiction of the FAA;

    (3) The defendant acted willfully; that is, the defendant acted deliberately and with knowledge that both the statement or writing was untrue and that his conduct was unlawful; and

16

(4) The statement or writing was material[5] to the activities or decisions of the FAA; that is, it had a natural tendency to influence, or was capable of influencing, the agency's decisions or activities.

*See* Ninth Cir. Model Crim. Jury Instructions No. 8.73 (2021 edition). The initial determination as to whether the matter is one within the jurisdiction of a department or agency of the United States—apart from the issue of materiality—should be made by the court as a matter of law. *United States v. F.J. Vollmer & Co., Inc.*, 1 F.3d 1511, 1518 (7th Cir. 1993).

In addition, no mental state is required with respect to the fact that a matter is within the jurisdiction of a federal agency. *United States v. Green*, 745 F.2d 1205, 1208-10 (9th Cir. 1984) . Furthermore, the false statement need not be made directly to the government agency. *Id*. Finally, the defendant need not have acted with the intention of influencing the government agency. *United States v. Yermian*, 468 U.S. 63, 73 & n.13 (1984).

**D. Aircraft Parts Fraud**

Counts 8-11 charge the defendants Walker, Reed, Crowe, Hansen, Spares and Kapp with distinct aircraft parts frauds under 18 U.S.C. § 38. *See* ECF No. 862 (US Bill of Particulars as to Counts 8-10). Counts 12-13 charge Hansen and Spares, with additional aircraft parts frauds under 18 U.S.C. § 38. *See* ECF No. 1061.

1. <u>Count 8: Falsification or Concealment of a Material Fact.</u>

Count 8 charges Defendants Walker, Reed (severed), Crowe, Kapp, Hansen, and Spares with falsification or concealment of a material fact concerning an aircraft part under 18 U.S.C. § 38(a)(1)(A). To prove falsification or concealment, the Government must prove the following

---

[5] *United States v. Peterson*, 538 F.3d 1064, 1072 (9th Cir. 2008): "[W]hether the statement 'has a natural tendency to influence, or was capable of influencing, the decision of the decisionmaking body to which it was addressed.'" (quoting *Kungys v. United States*, 485 U.S. 759, 770 (1988) and citing *United States v. Gaudin*, 515 U.S. 506, 509 (1995) as "reaffirm[ing]" *Kungys*).

17

elements beyond a reasonable doubt:

(1) The defendant falsified or concealed a fact concerning an aircraft part;

(2) The fact was material;

(3) The defendant acted knowingly and with the intent to defraud;

(4) The defendant's action was in or affected interstate or foreign commerce[6].

18 U.S.C. § 38(a)(1)(A).

As specified in the government's Bill of Particulars (ECF No. 1061), on or about October 5, 2015, defendants Walker, Crowe, Kapp, Reed, and Hansen ordered counterfeit aircraft parts from Spares that included, but were not limited to, counterfeit tail rotor pitch change links (TRPCLs), falsely identified as legitimate part number 369A1807-9F. Spares shipped those counterfeit parts, falsely stating that they were legitimate TRPCLs; and defendants Walker, Reed, Crowe, Kapp, and Hansen, knowing that the parts were counterfeit, falsely placed legitimate part number 369A1807-9F3 on internal company records, letters, and other writings.

2. <u>Count 9: Materially Fraudulent Representation.</u>

Count 9 charges defendants Walker, Reed, Crowe, Kapp, Hansen, and Spares with making a materially fraudulent representation concerning an aircraft part under 18 U.S.C. § 38(a)(1)(B). To prove a materially fraudulent representation, the government must prove the following elements beyond a reasonable doubt:

(1) The defendant made a fraudulent representation concerning an aircraft part;

(2) The representation was material;

(3) The defendant acted knowingly and with the intent to defraud;

---

[6] The term "foreign commerce", as used in this title, includes commerce with a foreign country. 18 U.S.C. § 10.

(4) The defendant's action was in or affected interstate or foreign commerce.

18 U.S.C. § 38(a)(1)(B).

As specified in the government's Bill of Particulars (ECF No. 1061), on or about August 24, 2016, defendants Walker, Reed, Crowe, Kapp, and Hansen ordered counterfeit aircraft parts from Spares, which included but were not limited to, counterfeit TRPCLs falsely identified as part number 369A1807-9F.  Knowing that the counterfeit TRPCLs were manufactured without FAA approval, Spares nonetheless shipped the counterfeit parts and fraudulently represented on invoices, letters, packaging, and other papers that the counterfeit TRPCLs constituted FAA-compliant part number 369A1807-9F.  Knowing that TRPCLs were counterfeit, defendants Walker, Reed, Crowe, Kapp, and Hansen nonetheless fraudulently represented that the TRPCLs were legitimate aircraft parts by placing the part number 369A1807-9F on internal company records, letters, packaging, communications, and other papers.

### 3. Count 10: Conspiracy to Make or Use a Materially False Writing.

Count 10 charges Walker, Reed, Crowe, Kapp, Hansen, and Spares with conspiracy to make or use a materially false writing concerning an aircraft part in violation of 18 U.S.C. §§ 38(a)(3) and (a)(1)(C). To prove conspiracy to make or use a materially false writing, the government must prove the following elements beyond a reasonable doubt:

(1) Beginning on or about 2007 and continuing through at least 2018, there was an agreement between two or more persons to make or use a materially false writing concerning an aircraft part in violation of 18 U.S.C. § 38(a)(1)(C); and

(2) The defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it.

18 U.S.C. § 38(a)(3); Ninth Cir. Model Crim. Jury Instructions No. 8.20, comment (2019 edition) (proof of overt act is not required for conspiracy when the underlying statute does not require such

19

proof); *see also United States Parker*, 553 F.3d 1309, 1316-17 (10th Cir. 2009) (citing *United States. v. Edwards*, 69 F.3d 419, 430 (10th Cir. 1995)).

As provided in the government's Bill of Particulars (ECF No. 1061), from 2002 through January 16, 2018, the defendants conspired to defraud the government and others by agreeing to falsely identify numerous counterfeit critical parts as legitimate parts, including the TRPCL identified as number 369A1807-9F. Although no overt act is required, the government will nonetheless show that the Defendants repeatedly made materially false writings, entries, certifications, documents, records, data plates, labels, and other electronic communications wherein they falsely represented the TRPCLs were legitimate, FAA-compliant parts.

4.  Count 11: Sale, Trade, or Installation of an Aircraft Part by Means of a Fraudulent Representation.

Count 11 charges defendants Walker, Reed, Crowe, Kapp, Hansen, and Spares with unlawful sale, trade, or installation of an aircraft part by means of a fraudulent representation, in violation of 18 U.S.C. § 38(a)(2). To prove unlawful sale, trade, or installation of an aircraft part, the government must prove the following elements beyond a reasonable doubt:

(1) The defendant sold, traded, or installed an aircraft part by means of a fraudulent representation;

(2) The defendant acted knowingly and with the intent to defraud;

(3) The defendant's action was in or affected interstate or foreign commerce.

18 U.S.C. § 38(a)(2).

5.  Count 12: Falsification or Concealment of a Material Fact.

Count 12 charges Hansen and Spares with falsification or concealment of a material fact concerning an aircraft part under 18 U.S.C. § 38(a)(1)(A). To prove falsification or concealment, the government must prove the following elements beyond a reasonable doubt:

20

(1) The defendant falsified or concealed a fact concerning an aircraft part;

(2) The fact was material;

(3) The defendant acted knowingly and with the intent to defraud;

(4) The defendant's action was in or affected interstate or foreign commerce.

18 U.S.C. § 38(a)(1)(A).

6. <u>Count 13: Sale, Trade, or Installation of an Aircraft Part by Means of a Fraudulent Representation.</u>

Count 13 charges Hansen and Spares with unlawful sale, trade, or installation of an aircraft part by means of a fraudulent representation, in violation of 18 U.S.C. § 38(a)(2). To prove unlawful sale, trade, or installation of an aircraft part, the government must prove the following elements beyond a reasonable doubt:

(1) The defendant sold, traded, or installed an aircraft part by means of a fraudulent representation;

(2) The defendant acted knowingly and with the intent to defraud;

(3) The defendant's action was in or affected interstate or foreign commerce.

18 U.S.C. § 38(a)(2).

7. <u>Special Issues.</u>

a. **Facts Relevant for Sentencing.**

If the jury finds one or more of the defendants guilty of aircraft parts fraud, the jury must then make the following factual determinations as to each Count for purposes of sentencing:

(1) Does the offense relate to the aviation quality of an aircraft part and was that part installed on an aircraft?

(2) Was the failure of the aircraft part to operate as represented the proximate cause of a malfunction or failure that resulted in serious bodily injury?

21

(3) Was the failure of the aircraft part to operate as represented the proximate cause of a malfunction or failure that resulted in the death of any person?

18 U.S.C. § 38(b)(1) – (5); *see also United States v. Burkholder*, 816 F.3d 607, 615 (10th Cir. 2016) ("Congress explicitly included proximate-cause language in statutory penalty enhancements" for convictions under 18 U.S.C. § 38(b)); *Sudberry v. Arizona*, 463 F. App'x 629, 630 (9th Cir. 2011) ("Like gross negligence, proximate cause is generally a question of fact for the jury") (internal quotes omitted); *Exec. 1801 LLC v. Eagle W. Ins. Co.*, No. 3:18-CV-00580-SB, 2021 WL 5114665, at *9 (D. Or. June 11, 2021) ("[T]he Court [also] sees only support for the undisputed proposition that, as a general matter, questions of proximate cause should be left for the jury.").

### b. As a Corporation, Hansen May Be Found Criminally Liable.

As a corporation, Hansen may be found guilty of aircraft fraud under the same laws that apply to a personal defendant. Corporate liability extends not only to acts authorized by the corporation, but also to that which outsiders would reasonably assume the corporate agent possessed authority to do.

In order to sustain its burden of proof for aircraft parts fraud counts, the government must also prove beyond a reasonable doubt that:

(1) Each of the acts committed by one or more officers, directors, employees, or agents were within the course and scope of the employment or agency by Hansen.

(2) The corporate officers, directors, employees, or agents committed each of the elements of the aircraft parts frauds with the intent to benefit Hansen.

*See New York Cent. & Hudson R.R. Co. v. United States,* 212 U.S. 481, 494–95 (1909); *United States v. Beusch,* 596 F.2d 871, 877 (9th Cir. 1979); *United States v. Hilton Hotels,* 467 F. 2d 1000, 1004 (9th Cir. 1972), *cert denied*, 409 U.S. 1125, (Mem.)(1973); *United States v. Western*

22

*Titanium, Inc.,* No. 08CR4229-JLS, 2010 WL 4659646 (S.D.Cal. Oct. 15, 2010) (Government's Proposed Jury Instr.); *Developments in the Law -- Corporate Crime: Regulating Corporate Behavior Through Criminal Sanctions*, 92 Harv. L. Rev. 1227, 1247 (1979).

### E. Aircraft Registration Violations

Defendants are charged with two types of criminal aircraft registration violations under 49 U.S.C. § 46306(b): (1) unlawfully employing a mechanic or pilot without an FAA mechanic or pilot certificate; and (2) displaying a false or misleading mark of aircraft nationality or registration.

1. <u>Defendants Employed Scores of Uncertificated Mechanics and Pilots to Fix and Fly Hansen Helicopters.</u>

Counts 14 through 95 (with the exception of Count 76 which was voluntarily dismissed) charge defendants Walker, Reed, Crowe, and Kapp with knowingly and willfully employing uncertificated airmen in violation of 49 U.S.C. § 46306(b)(8). Federal law defines "airmen" as including both helicopter mechanics and helicopter pilots. 49 U.S.C. § 40102(a)(8). As airmen, helicopter mechanics and helicopter pilots are required to obtain an airman certificates before serving or working as a pilot or mechanic. 14 C.F.R. Part 61 (requiring FAA pilot certification); 14 C.F.R. Part 65 (requiring FAA mechanic certification).

To prove unlawful employment of an uncertificated mechanic or pilot, the government must prove the following elements beyond a reasonable doubt:

(1) The defendant knowingly and willfully employed an individual for service as an airman or used an individual in any capacity as an airman;

(2) The individual did not have an authorized airman certificate;

(3) The aircraft was not used to provide "air transportation."

49 U.S.C. § 46306(b)(8); *see also United States v. Atkinson*, No. 99-30180, 99-30181, 2000 WL 1015905, at *1 (9th Cir. July 21, 2000) ("Atkinson's attempts to analogize simple FAA regulations

23

to highly technical tax laws are unpersuasive. The violation for which Atkinson was convicted—serving as an airman without a proper certificate—does not involve highly technical FAA regulations which might ensnare individuals engaged in apparently innocent conduct" (internal quotations omitted)).

For purposes of this specific criminal statute, federal law narrowly defines "air transportation" to include foreign and interstate air transportation involving transportation of passengers, property, or mail for compensation as a common carrier. 49 U.S.C. § 40102(a)(5), (23), and (25). Because the defendants' helicopters did not transport passengers, property, or mail for compensation as a common carrier, the third essential element is not at issue in this case.

    2.   <u>Defendants Displayed False Markings of Aircraft Nationality and/or Registration.</u>

Counts 96 and 97 charge defendants Walker, Reed, Crowe, and Kapp with displaying a false marking of aircraft nationality and/or registration on Hansen's aircraft in violation of 49 U.S.C. § 46306(b)(3). To prove unlawful display of false markings, the government must prove the following beyond a reasonable doubt:

(1) The defendant knowingly and willfully[7] displayed or caused to be displayed a mark on an aircraft relating to the nationality or registration of the aircraft;

(2) The mark displayed or caused to be displayed by the defendant was false or misleading;

---

[7] *United States v. Lloyd*, 807 F.3d 1128, 1166 (9th Cir. 2015) (in criminal prosecution for selling unregistered securities in violation of 15 U.S.C. § 77e, "willfully" does not require actor to have known conduct was unlawful (citing *Reyes*, 577 F.3d 1069)); and *United States v. Reyes*, 577 F.3d 1069, 1080 (9th Cir. 2009) (in prosecution for securities fraud, "willfully" means "intentionally undertaking an act that one knows to be wrongful; 'willfully' in this context does *not* require that the actor know specifically that the conduct was unlawful," quoting *United States v. Tarallo*, 380 F.3d 1174, 1188 (9th Cir. 2004) (emphasis in original)). In 18 U.S.C. § 1001, as well as cases alleging a false statement relating to health care matters in violation of 18 U.S.C. § 1035, the government must prove, among other things, that a defendant acted deliberately and with knowledge both that the statement was untrue and that his or her conduct was unlawful.

(3) The aircraft was not used to provide "air transportation."

Markings relating to an aircraft's tail number or "N-Number" are markings relating to "the nationality or registration of an aircraft." 14 C.F.R. § 45.23(a) (requirements for nationality and registration markings). In the event the owner of an aircraft sells the aircraft to a foreign buyer, the seller must export the U.S. aircraft registration to the new country wherein the aircraft will be registered. 14 C.F.R. § 21.335 (responsibilities of exporters). The seller must also request cancellation of the U.S. registration and airworthiness certificates, return the U.S. registration and airworthiness to the FAA, and provide a statement to the FAA certifying that the U.S. identification and registration numbers have been removed from the aircraft. *Id.*; *see also* 14 C.F.R. § 45.33.

### F. Honest Services Fraud

Defendants Walker, Crowe, Reed, and Kapp are charged in Counts 3 through 5 of the original Indictment (ECF No. 1) and in Counts 67 through 69 of the Superseding Indictment (ECF No. 369) with honest services fraud in violation of 18 U.S.C. §§ 1343 and 1346.[8] To prove honest services wire fraud, the government must prove each of the following elements beyond a reasonable doubt:

(1) The defendants devised or knowingly participated[9] in a scheme or plan to defraud the public by depriving the public of their right of the honest services of Timothy Cislo, FAA Aviation Safety Inspector;

(2) The scheme or plan included bribery, that is, an exchange of a thing of value for some

---

[8] Although the SSI does not reallege Honest Services Fraud, because the Government has not dismissed the original or Superseding Indictments, the Honest Services Fraud counts in those two indictments are still operative and presentable to the jury. *See, e.g., United States v. Pacheco*, 912 F.2d 297, 305 (9th Cir. 1990) ("An original indictment remains pending until it is dismissed or until double jeopardy or due process would forbid prosecution under it."); *United States v. Holm*, 550 F.2d 568, 569 (9th Cir. 1977) (citation omitted) ("It is undisputed that the Government may have two indictments outstanding against an accused at the same time.").

[9] *See, e.g., United States v. Manion*, 339 F.3d 1153, 1156-57 (9th Cir. 2003) (defendant need not make up scheme; knowing participation is sufficient).

25

official action by Timothy Cislo's services as FAA Aviation Safety Inspector;

(3) Timothy Cislo owed a fiduciary duty to the public;

(4) The defendants acted with the intent to defraud, that is, to deceive or cheat,[10] by depriving the public of its right of honest services;

(5) The scheme to defraud involved a material misrepresentation, false statement, false pretense, concealment, or omission; and

(6) The defendants transmitted, or caused to be transmitted, writings, signs, signals, or sounds by means of wire, radio, or television communication across state lines to carry out or attempt to attempt to carry out the scheme or plan.

Ninth Cir. Model Crim. Jury Instructions No. 8.123 (modified). Title 18 U.S.C. § 1343 states that "[f]or the purposes of this chapter, the term 'scheme or artifice to defraud' includes a scheme or artifice to deprive another of the intangible right of honest services." "Under this theory, the object of the fraudulent scheme is the victim's intangible right to receive honest services." *United States v. Williams*, 441 F.3d 716, 720 (9th Cir. 2006).

If the official acts or makes his decision based on the official's own personal interests, such as accepting a bribe, taking a kickback or receiving personal benefit from an undisclosed conflict of interest, the official has defrauded the public of the official's honest services even though the public agency involved may not suffer any monetary loss in the transaction. *United States v. Garrido*, 713 F.3d 985, 995 (9th Cir. 2013) ("Public officials and public employees inherently owe a duty to the public to act in the public's best interest. If, instead, the official acts or makes his decision based upon the official's own personal interest, such as accepting a bribe the official has defrauded the public of the official's honest services even though the city may not suffer any

---

[10] *See* Ninth Cir. Model Crim. Jury Instructions No. 3.17 ("An intent to defraud is an intent to deceive and cheat").

26

monetary loss in the transaction"); *Skilling v. United States*, 561 U.S. 368, 400-401 (2010) (honest services statute targets corruption where "the betrayed party suffered no deprivation of money or property … Even if the scheme occasioned a money or property gain for the betrayed party … actionable harm lay in the denial of that party's right to the offender's honest services."); and *United States v. Kincaid-Chauncey*, 556 F.3d 923, 944 (9th Cir. 2009) (honest "official has defrauded the public of the official's honest services even though no tangible loss to the public has been shown because the public official deprived the public of its right to honest and faithful government").

Honest services fraud occurs in the presence of a bribe or kickback. When considering amending various bribery statutes, Congress expressly considered *both* parties to a bribe as participating equally, as coconspirators, in the most "corrosive" crime imaginable: "When a bribe is exchanged, the parties have, in effect, conspired to deprive the United States of the honest services of its official. Such conduct is universally condemned. Nothing is more corrosive to the fabric of good government than bribery, and [the revised] laws seek to preserve to the United States the value of the honest services of its officials and employees by severely punishing their sale." *See* H.R. Rep. No. 87-748 at 6 (1961).

Furthermore, a payment or benefit is a bribe if there is an unlawful purpose in giving it, even if there is also a lawful purpose. *See, e.g., United States v. Biaggi*, 909 F.2d 662, 683 (2d Cir. 1990) (a payment "sought and paid for both lawful and unlawful purposes . . . [constitutes a bribe]. A valid purpose that partially motivates a transaction does not insulate participants in an unlawful transaction from criminal liability.") (finding sufficient evidence of a bribe where a payment was made in part for services rendered by congressman's son's law firm, and in part to influence his official acts); and *United States v. Sawyer*, 85 F.3d 713, 741 (1st Cir. 1996) (defendant guilty of theft of honest services or bribery if, in addition to desire to cultivate business

or political friendship, he also had an intent to cause the recipient to alter her official acts).

Accordingly, a defendant may be convicted if he possesses a dual intent – an illegal intent in addition to a legal intent. *See, e.g., United States v. Woodward*, 149 F.3d 46, 70 (1st Cir. 1998). Thus, the defendants can be guilty of honest services fraud by providing Mr. Cislo with an airplane, gifts, meals, or other things of value as long as their motivation was, in part, to influence Cislo's official acts, even if they were also motivated by the intent to create a favorable business climate or out of friendship with Cislo.

**G. Conspiracy to Commit Wire Fraud**

Count 99 charges defendants Walker, Crowe, Kapp, and Reed (severed) with conspiracy to commit wire fraud in violation of 18 U.S.C. § 1343. To prove conspiracy to commit mail and wire fraud, the United States must prove that:

    (1) There was an agreement between two or more persons to commit wire fraud;

    (2) The defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it.

Ninth Cir. Model Crim. Jury Instructions No. 8.20 (2019 edition).

Here, the evidence will show that the defendants entered into an agreement to defraud the government and their clients, various tuna boat companies, by means of materially false statements about the registration and airworthiness of leased helicopters, and executed their scheme by means of wire communications. The agreement that forms the basis for the conspiracy need not be explicit, but may be inferred from the defendant's acts or from other circumstantial evidence showing the conspirators acted together for a common illegal goal. *United States v. Calabrese*, 825 F.2d 1342, 1348 (9th Cir. 1987). The Ninth Circuit has held that "[i]nferences of the existence of such an agreement may be drawn 'if there be concert of action, all the parties working together understandingly, with a single design for the accomplishment of a common purpose.'" *United*

28

*States v. Hubbard*, 96 F.3d 1223, 1226 (9th Cir. 1996) (quoting *United States v. Monroe*, 552 F.2d 860, 862 (9th Cir. 1997)).

Moreover, the government need not prove that the defendants committed an overt act in furtherance of the conspiracy in order to sustain a conviction. Conspiracy to commit wire fraud, 18 U.S.C. § 1349, does not contain an overt act requirement, and, as such, no proof of an overt act is required at trial. The United States Supreme Court has repeatedly held that proof of an overt act is not required when the applicable statute does not require proof of an overt act. *See e.g., Whitfield v. United States*, 543 U.S. 209, 215-16 (2005); *Salinas v. United States*, 522 U.S. 52, 63-66 (1997); *United States v. Shabani*, 513 U.S. 10, 15-16 (1994).

**H. Wire Fraud**

Counts 100 to 104 charge Walker, Reed, Crowe, and Kapp with wire fraud in violation of 18 U.S.C. §§ 1343, 1346, and 2. To prove wire fraud, the government must prove the following elements beyond a reasonable doubt:

(1) The defendant knowingly participated in or devised a scheme or plan to defraud, or a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or omitted facts. Deceitful statements of half-truths may constitute false or fraudulent representations;

(2) The statements made or facts omitted as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property;

(3) The defendant acted with the intent to defraud, that is, the intent to deceive and cheat; and

(4) The defendant used, or caused to be used, an interstate or foreign wire communication to carry out or attempt to carry out an essential part of the scheme.

29

Ninth Cir. Model Crim. Jury Instructions No. 8.124 (2021 edition); s*ee Neder v. United States*, 527 U.S. 1, 20-25 (1999); *United States v. Woods*, 335 F.3d 993, 997 (9th Cir. 2003).

The wire fraud statute focuses on the scheme to defraud rather than actual fraud. *United States v. Andreadis*, 366 F.2d 423, 431 (2d Cir 1966). Accordingly, the United States is not required to prove that anyone was defrauded or sustained a loss. *See e.g., United States v. Rasheed*, 663 F.2d 843, 850 (9th Cir. 1981). In other words, the Defendants need not have succeeded in their scheme to be guilty of wire fraud. *United States v. Utz*, 886 F.2d 1148, 1150 (9th Cir. 1989).

Furthermore, the government need not present direct proof of fraudulent intent; fraudulent intent may be proved by demonstrating that a representation was made with reckless indifference to its truth or falsity. *See e.g. United States v. Dess*, 34 F.3d 838, 842-43 & n.1 (9th Cir. 1994); *United States v. Gay*, 967 F.2d 322, 326 (9th Cir. 1992). In addition, fraudulent intent may, and often must be, proven by circumstantial evidence, and can be inferred from the activities of the parties involved. *See Rasheed*, 663 F.2d at 848, (9th Cir. 1981); *United States v. Jones*, 425 F.2d 1048, 1058 (9th Cir. 1970); *Phillips v. United States*, 356 F.2d 297, 303 (9th Cir. 1965).

Here, defendants knowingly, and with the intent to deceive and cheat, participated in a scheme to defraud the government and tuna boat companies by means of false statements concerning the registration and airworthiness of leased helicopters. Defendants used interstate and foreign wire communications to accept payments from tuna boat companies as a means of carrying out an essential part of their scheme.

## I.  Money Laundering

Counts 105 through 110 charge defendant Walker with money laundering in violation of 18 U.S.C. § 1957. To prove money laundering, the government must prove each of the following elements beyond a reasonable doubt:

(1) The defendant knowingly engaged or attempted to engage in a monetary transaction;

30

(2) The defendant knew the transaction involved criminally derived property;

(3) The property had a value greater than $10,000;

(4) The property was, in fact, derived from honest services fraud or wire fraud; and

(5) The transaction occurred in the United States.

Ninth Cir. Model Crim. Jury Instructions No. 8.150 (2021 edition). The term "monetary transaction" means the deposit, withdrawal, transfer, or exchange, in or affecting interstate commerce[11], of funds or a monetary instrument by, though, or to a financial institution. Ninth Cir. Model Crim. Jury Instructions No. 8.123A; 18 U.S.C. § 1957(a). The term "criminally derived property" means any property constituting, or derived from, the proceeds of a criminal offense. The government must prove that the defendant knew that the property involved in the monetary transaction constituted, or was derived from, proceeds obtained by some criminal offense. *Id.* The government does not have to prove that the defendant knew the precise nature of that criminal offense, or knew the property involved in the transaction represented the proceeds of Honest Services Fraud or Wire Fraud. *Id.*

### J. Forfeiture Is a Matter for the Court

Criminal forfeiture is not an element of the criminal offenses with which a defendant is charged; rather, it is a form of punishment that is imposed as part of the criminal sentence. *Libretti v. United States*, 516 U.S. 29, 39-40 (1995). The procedures for determining the forfeitability of assets in criminal cases are set forth in Rule 32.2 of the Federal Rules of Criminal Procedure.

---

[11] The term "interstate commerce", as used in this title, includes commerce between one State, Territory, Possession, or the District of Columbia and another State, Territory, Possession, or the District of Columbia. 18 U.S.C. § 10.

31

**IV. ANTICIPATED EVIDENCE**

    A. Witnesses

        1. Former and Current Hansen Employees.

- Michael Hamouz
- Jonathan Hurley
- David Walters
- Francis Holmes
- Jason King
- Spencer Wageman
- Kevin Warner
- Rigoberto Linares
- Lito Arce
- Leslie Zuroske
- Roel M. Dorian
- Thomas Geluz Bustos

- Gelacio Agualada
- Medilyn Cunanan Calma
- Dianne Keller
- William Lee Lucas
- Maria Socorro JC Snaer
- Jose Eduardo Marinho Gonsalves
- Brian Dalke
- Robert Dodd Plew
- Ben Parker
- Brian Jewell
- Marc Braga

        2. Other Fact Witnesses.

- Marsha Knight
- Mark Anderson
- Norman Chang
- Karen Duenas
- Lynn Marie Leon Guerrero
- Dena Krystal Rendon
- Felix R.I. Concepcion
- Edward "Ed" Brown
- Christopher Yom
- Eric J. Secrest
- James G. Marson
- John Popecki
- Timothy Cislo
- Michael Leo Shults
- Victor Litkei
- Juliet Crowe
- Gary Robertson

- Mary D. Rogers
- Barbara Doty
- Gabriel Ko
- Roger Bruce Campbell Shepard
- Dr. David Weingarten
- Dr. Alix Chennet
- Chris Wolfe
- Kurtis Crowe
- Michael Boler
- Randy Breitzman
- Marvin R. Reed (use immunity)
- Randall Rogers (use immunity)
- Scott Everett Luce
- Daniel Hof Sr.

32

### 3. Records Custodians[12].

- Joseph P. Bacon
- Custodian of Records, Bank of Hawaii
- Custodian of Records Community Bank & Trust
- Custodian of Records Community First Guam
- Custodian of Records Internal Revenue Service
- Disclosure Officer Guam Department of Revenue & Taxation
- Custodian of Records Business License Division Guam Department of Revenue & Taxation
- Custodian of Records, Guam Regional Medical Center
- Custodian of Records, Guam Memorial Hospital

### 4. Federal Agents and Employees.

- Viranosith Khamvongsa Special Agent, Internal Revenue Service
- Peter Prozik, Federal Bureau of Investigation.
- Wynton El, Federal Bureau of Investigations
- Michael Gadsden, Federal Bureau of Investigations
- Patrick Ernst Federal Bureau of Investigations
- John McDuffie CBP Officer DHS/Customs and Border Protection
- Douglas Dymock Aviation Safety Inspector FAA Southwest
- Regional Office.
- Misty Pena Supervisory Management & Program Analyst FAA Southwest Regional Office
- Mark Pablo, CBP Officer DHS/Customs and Border Protection
- Kathleen Davis, Federal Reserve Bank
- Richard Ficarelli DOT-OIG Special Agent
- Glenda White DOT-OIG Special Agent
- Reggie Lee DOT-OIG Special Agent

### 5. Expert Witnesses

The government may call the following expert witnesses at trial. The government provided notice to the defense of the identity of its expert and the subject matter of their testimony, along with copies of their curriculum vitae. Expert testimony is proper in order to present "scientific, technical, or other specialized knowledge" which "will assist the trier of fact to understand the

---

[12] The government has requested lead counsel for the defense, Mr. McConwell, agree to waive the necessity for calling records custodians.

33

evidence or to determine a fact in issue..." Fed. R. Evid. 702. Expert testimony must be both relevant, i.e., it must have a valid connection to the pertinent inquiry at trial, and reliable, i.e., it must be trustworthy. *Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579 (1993).

- Jeff Guzzetti: President Guzzetti Aviation Risk Discovery, LLC.
- Jeff Klang: Assistant Chief Counsel for FAA International Affairs & Legal Policy Division
- Sergio Lopez: Supervisory Aviation Safety Inspector FAA Miami FSDO-19.
- Robert Sprayberry: Aerospace Engineer FAA International Policy Division.
- Teshara B. Jones: Defense Contract Audit Agency
- Arthur Randal Steffes: FAA Special Emphasis Investigation Team
- Jeffrey M. Jennings: FAA employee/pilot/expert in Part 91 operations
- John Popecki: expert mechanic
- David Cann: defense expert (unless the Court strikes his testimony)

B. Documents.

The government submitted in a separate document a list of exhibits and provided all evidence to defense. The evidence generally falls into the following categories:

- Documents (including emails, spreadsheets, chats, etc.) seized pursuant to 2016 search warrant
- Documents obtained pursuant to grand jury subpoenas
- Documents obtained pursuant to Inspector General Subpoenas
- Documents obtained from reciprocal discovery
- Documents obtained as part of depositions
- Documents created as part of the criminal investigation
- FAA documents (public)
- NTSB documents (public)
- Evidence Obtained from Civil Aviation Authorities of New Zealand, Philippines, and Federated States of Micronesia via MLAT
- Documents attached to court filings
- Documents referenced in Motions for Judicial Notice

V. **EVIDENTIARY AND OTHER TRIAL ISSUES**

A. <u>Authentication</u>

1. <u>Generally.</u>

A proponent authenticates an exhibit by making a "prima facie showing" that the item is

34

what the proponent claims it is. *See* Fed. R. Evid. 901(a); *United States v. Gadson*, 763 F.3d 1189, 1203-04 (9th Cir. 2014) (party offering evidence discharges its burden under Rule 901 by "mak[ing] a prima facie showing of authenticity 'so that a reasonable juror could find in favor of authenticity or identification.' ") (quoting *United States v. Yin*, 935 F.2d 990, 996 (9th Cir. 1991)); *United States v. Tank*, 200 F.3d 627, 630 (9th Cir. 2000) ("The government need only make a prima facie showing of authenticity, as [Rule 901] requires only that the court admit evidence if sufficient proof has been introduced so that a reasonable juror could find in favor of authenticity or identification.") (quotation marks omitted); *United States v. Black*, 767 F.2d 1334, 1342 (9th Cir. 1985) ("[Rule 901] requires only that the court admit evidence if sufficient proof has been introduced so that a reasonable juror could find in favor of authenticity or identification. The credibility or probative force of the evidence offered is, ultimately, an issue for the jury") (quotation marks and citation omitted).

The "prima facie showing" test is a "low threshold." *United States v. Ortiz*, 776 F.3d 1042, 1044, 1045 (9th Cir. 2015);.*see also United States v. Tin Yat Chin*, 371 F.3d 31, 37-38 (2d Cir. 2004) ("Rule 901 does not erect a particularly high hurdle[.] The proponent is not required to rule out all possibilities inconsistent with authenticity, or to prove beyond any doubt that the evidence is what it purports to be. Rule 901's requirements are satisfied if sufficient proof has been introduced so that a reasonable juror could find in favor of authenticity or identification. Once Rule 901's requirements are satisfied, the evidence's persuasive force is left to the jury.") (citations and quotation marks omitted); *United States v. Reilly*, 33 F.3d 1396, 1404 (3d Cir. 1994) ("[T]he burden of proof for authentication is slight[.] [T]he showing of authenticity is not on a par with more technical evidentiary rules, such as hearsay exceptions, governing admissibility. Rather, there need be only a prima facie showing, to the court, of authenticity, not a full argument on admissibility.")

## 2. Duplicates.

Most items of evidence offered will be duplicates. A duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original, or (2) the circumstances make it unfair to admit the duplicate instead of the original. *See* Fed. R. Evid. 1003. The party opposing admission on Rule 1003 grounds has the burden of producing evidence to trigger one of these exceptions. *See, e.g., United States v. Stewart*, 420 F.3d 1007, 1021 n.13 (9th Cir. 2005).

## 3. Foundation for Still Photographs/Video Recording

Copies of photographs may be introduced. Under Rule 901 of the Federal Rules of Evidence, a witness familiar with a scene or object may provide a sufficient foundation for admission of a photograph by testifying that it fairly and accurately depicts the scene or the object at the relevant time. *See United States v. Brannon*, 616 F.2d 413, 416 (9th Cir. 1980).

Videotaped evidence is categorized as photographic evidence under Federal Rule of Evidence § 1001(2). The party offering a videotape in evidence must show that it is an accurate and faithful representation of what it purports to show. *Phiropoulous v. State*, 908 S.W. 3d 712, 714 (Mo.App.E.D. 1995). The foundation may be established by any witness who is familiar with the subject matter of the tape and is competent to testify from personal observation. Id." *Suthterland v. Koster*, No. 4:10CV1611MLM, 2011 WL 2784108 (E.D.Mo., 2011).

"Under federal law, a foundational objection to the admission of a videotape is without merit where testimony indicates that the tapes are 'fair and accurate' *United States v. Roach*, 28 F.3d 729, 733 (8th Cir. 1994). Strict compliance with guidelines for admission of videotapes is not required where a videotape's 'substance and circumstances under which it was obtained were sufficient proof of its reliability.' *Id.* at 733 n. 4 (citing *United States v. Clark*, 986 F.2d

36

65, 68 (4th Cir. 1993)). … Additionally, videotapes are admissible to show how a crime was committed and to link a defendant to a crime. *See e.g.*, *United States v. Standish*, 3 F.3d 1207, 1210 (8th Cir. 1993)." *Suthterland v. Koster*, 2011 WL 2784108 (E.D.Mo., 2011).

4. <u>Evidence Obtained from Civil Aviation Authorities of New Zealand, Philippines, and Federated States of Micronesia via MLAT.</u>

Much like Federal Rule of Evidence 902(11) certifications for domestic business records, 18 U.S.C. § 3505 provides that foreign business records are admissible in criminal proceedings if they are "record[s] kept in the course of regularly conducted business activity" and records are made "at or near the time of the occurrence of the matters set forth, by (or from information transmitted by) a person with knowledge of those matters." *See United States v. Osorio*, No. 88-5523, 1988 WL 83427, at *1 (4th Cir. July 26, 1988). Section 3505 requires that foreign records can be authenticated through a signed certification. *See* 18 U.S.C. § 3505(a). The documents provided by the Philippine Civil Aviation Authority and the New Zealand Aviation Authority, satisfy all of the requirements set forth above. Accordingly, the foreign documents are admissible without any need for calling a custodian to provide live testimony to authenticate the documents. *See United States v. Strickland*, 935 F.2d 822, 831 (7th Cir. 1991) (admitting records and noting Congressional intent to "streamline" admission of foreign business records by substituting § 3505 certification for "the cumbersome and expensive procedures' of live-witness testimony under Rule 803(6)"); *United States v. Al-Imam*, No. 17-cr-00213 (CRC), 2019 WL 2358365, at *4 (D.D.C. June 4, 2019).

B. <u>Evidence "Inextricably Intertwined" With the Scheme to Defraud.</u>

The United States will seek to introduce evidence that (1) the defendants similarly bribed, lied to, and defrauded other civil aviation authorities around the world; and (2) failed to report income derived from the scheme to defraud. While such evidence generally is not admissible to

37

prove the character of a person in order to show action in conformity therewith, *see* Fed. R. Evid. 404(b), the government is *not* offering this evidence under Rule 404(b). Rather, the uncharged conduct is "inextricably intertwined" with defendant's execution of the ongoing scheme that is charged in the indictment with specificity.

It is well settled in the Ninth Circuit that Rule 404(b) does not exclude evidence of uncharged conduct that is inextricably intertwined with the charged offenses. *United States v. Sayakhom*, 186 F.3d 928, 938 (9th Cir. 1999). "Evidence should not be treated as 'other crimes' evidence 'when the evidence concerning the [other] act and the evidence concerning the crime charged are inextricably intertwined.'" *United States v. Soliman*, 813 F.2d 277, 279 (9th Cir. 1987) (citing *United States v. Aleman*, 592 F.2d 881, 885 (5th Cir. 1979)); *see also United States v. Ripinsky*, 129 F.3d 518, 1440 (9th Cir. 1997) (uncharged crimes were "direct evidence of the ongoing conspiracy charged in the indictment"); *United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1012 (9th Cir. 1995) ("[W]hen it is clear that particular acts of the defendant are part of, and thus inextricably intertwined with, a single criminal transaction," admission of evidence of those acts does not violate Rule 404(b)).

C.  Defendants' Own Statements.

1.  Admissions of a Defendant are Admissible When Offered by the Government but Defendants Cannot Introduce Their Own Hearsay Statements.

The United States will introduce Defendants' own statements, including statements made in recorded telephone calls, email messages, and/or chat transcripts, including a number of the examples referenced throughout this brief.  Fed. R. Evid. 801(d)(2)(A) provides that a party's own statement is directly admissible against the party. *United States v. Matlock*, 415 U.S. 164, 172 (1974) (A party's "own out-of-court admissions . . . surmount all objections based on the hearsay rule . . . and [are] admissible for whatever inferences the trial judge [can] reasonably draw.").

38

The Government will offer statements made by defendants into evidence. Fed. R. Evid. 801(d)(2)(A). Under Rule 801(d)(2)(A), a party-opponent's own statements are admissible against that party-opponent as non-hearsay. Although the government may offer a statement into evidence against a defendant as an admission, the defendant cannot offer his prior statements on his own behalf for proof of the truth of the matter asserted since these self-serving statements are hearsay if not offered against a party opponent. *See United States v. Ortega*, 203 F.3d 675, 682 (9th Cir. 2000) (defendant could not introduce non-self-inculpatory statements because they were inadmissible hearsay). Nor can defendants seek to introduce such hearsay statements through cross-examination of other witnesses. *United States v. Fernandez*, 839 F.2d 639, 640 (9th Cir. 1988).

### 2. *Bruton* Does Not Bar Introduction of Defendants' Statements.

As set forth in previous filings (ECF Nos. 670, 891, 976, 1132, 1157 and 1196), the United States submits that statements made by Defendants Rogers (severed) and Reed (severed) to federal investigators are not powerfully or facially incriminating, standing alone, and are therefore not subject to *Bruton v. United States*, 391 U.S. 123 (1968). To the extent the Court disagrees, the Government can readily redact the purportedly offending statements in a way that "[does] not lead to the inference that a specific person was named." *United States v. Peterson*, 140 F.3d 819, 822 (9th Cir. 1998).

### D. Summary Exhibits.

The Government will seek to introduce summary exhibits into evidence under Rule 1006 of the Federal Rules of Evidence. Rule 1006 provides that "[t]he proponent may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court." Fed. R. Evid. 1006. The proponent of summary evidence needs to "establish that the underlying materials upon which the summary is based (1) are

39

admissible in evidence and (2) were made available to the opposing party for inspection." *United States v. Rizk*, 660 F.3d 1125, 1130 (9th Cir. 2011). Summary evidence admitted under Rule 1006 is not only demonstrative, but also substantive. *See United States v. Woods*, 943 F.2d 1048, 1053-54 (9th Cir. 1991) (stating that "[c]harts and summaries as evidence are governed by Federal Rule of Evidence 1006" and upholding the admission of the government's summary charts in a tax evasion case).

The Ninth Circuit generally prefers that trial courts not admit both summary evidence and voluminous materials underlying them, but has acknowledged a district court's authority to exercise its "discretion under [Federal Rule of Evidence] 611(a) to admit summary exhibits for the purpose of assisting the jury in evaluating voluminous evidence." *See United States v. Anekwu*, 695 F.3d 967, 981 (9th Cir. 2012). Indeed, courts regularly admit such summary exhibits in cases involving large quantities of financial information like this one. *See United States v. Aubrey*, 800 F.3d 1115, 1130 (9th Cir. 2015) (admitting summary charts where the witness based them on "multiple banker's boxes of bank statement [, which] constitute[d] the type of material anticipated by Rule 1006").

In this case, the Government seeks to admit the following summary exhibits as substantive evidence, along with the underlying voluminous evidence, if necessary: 1) FAA registration, ownership, and other information regarding defendant helicopters; 2) foreign aviation information; 3) Deposits and other financial transactions as evidenced in defendants' bank and QuickBooks records; 4) accidents involving defendants' helicopters both before and after defendants' purchase of them; and 5) certification information regarding defendants' airmen.

These summary exhibits not only summarize the voluminous records and documents—all of them relevant and admissible—but also categorize and synthesize the relevant evidence to assist the jury in evaluating voluminous evidence. Without them, the jury would be left to sift through

and compare thousands of pages of different types of documents before it can adequately isolate, categorize, and focus on the evidence central to the issues in question. Admitting these summary exhibits will foster efficient jury deliberation and help avoid wasting time in the presentation of the evidence. *See* Fed. R. Evid. 611(a). All have been provided to defense, some as long ago as August of 2020. To date, none of the defendants has objected.

E. <u>Incriminating Evidence Outside the Statute of Limitations.</u>

The statute of limitations for wire fraud is five years. 18 U.S.C. § 3238. Defendants were first indicted on May 31, 2018. Criminal acts constituting wire fraud committed by the Defendants before May 31, 2013 thus fall outside the statute of limitations. Accordingly, the government did not charge the defendants with immigration fraud, tax fraud, wire fraud, false statements, and other available criminal statutes that had occurred before the date.

This does not prevent the government from introducing evidence of incriminating acts committed by the defendants prior to May 31, 2013. It is well established that "the statute of limitations does not bar the introduction of evidence of acts that occurred outside the limitations period." *United States v. Musacchio*, 968 F.2d 782, 790 (9th Cir. 1991). The statute of limitations is "a procedural rule that requires the bringing of a complaint within a certain time after the completion of a crime," and not "a rule that restricts the introduction of evidence." *Id.* at 790.

As noted above, as early as 1992 and continuing through the present, the Defendants engaged in a comprehensive scheme to defraud the Government, the public, and their clients as to the safety and regulatory compliance of their helicopters. Indeed, the Defendants' acts during the period show the genesis of the overarching fraud scheme and the absence of mistake and consciousness of guilt. As such, evidence from this entire time period is direct evidence of the existence of a fraud scheme and the intent to defraud, evidence that is relevant and admissible as to the elements of wire fraud and other charges, regardless of the statute of limitations.

F.   Prior Rulings on Motions in *Limine.*

The Court has ruled on a number of Motions in *Limine*, but not all of them to date.  The government incorporates by reference those rulings.

G.   Presentation of Evidence.

In the interest of judicial economy and efficiency, the Court can set the order of witness examination and presentation. Fed. R. Crim. P. 611(a).  The government requests the Court require defense to question any government witness it intends to call in its case-in-chief following the government's re-direct examination of that witness. This presentation and examination of witnesses will avoid wasting the Court and the witnesses' time, many of whom are travelling from the United States and other parts of the world at the government's cost.

H.   Spousal and Marital Privileges.

The government has served Mary Rogers, wife of Rogers, and Juliet Crowe, wife of Crowe, with trial subpoenas concerning their roles in their husbands' businesses. Federal Rule of Evidence 501, provides that the common law – "as interpreted by the courts of the United States in the light of reason and experience" – governs a claim of privilege. Fed. R. Evid. 501; *United States v. Griffin*, 440 F.3d 1138, 1143–44 (9th Cir. 2006). The common law recognizes two separate privileges arising out of the marital relationship: (1) the anti-marital facts privilege, and (2) the marital communications privilege. *United States v. Marashi*, 913 F.2d 724, 729 (9th Cir. 1990).

The anti-marital facts privilege, also called the "adverse spousal testimony" privilege, permits a witness to refuse to testify against her or her spouse. *Griffin,* 440 F.3d at 1143; *see also Trammel v. United States*, 445 U.S. 40, 53 (1980). The witness-spouse alone holds the privilege and may choose to waive it. *Unites States v. Vo*, 413 F.3d 1010, 1016 (9th Cir. 2005). Thus, if these spouses choose to testify against Rogers and Crowe, they cannot prevent her from doing so.

The marital communications privilege "bars testimony concerning statements privately

communicated between spouses." *Marashi*, 913 F.2d at 729. The marital communications privilege "protects from disclosure private communications between spouses," *Griffin*, 440 F.3d at 1143–44 (citations omitted), and may be invoked by the non-testifying spouse. *Marashi*, 913 F.2d at 729. However, because the marital communications privilege "obstructs the truth seeking process," its use "in criminal proceedings requires a particularly narrow construction because of society's strong interest in the administration of justice." *United States v. White*, 974 F.2d 1135, 1138 (9th Cir. 1992) (citations omitted).

The marital communications privilege is limited to: (1) "only ... words or acts intended as communication to the other spouse," (2) "only those communications made during a valid marriage," and (3) "only ... those marital communications which are confidential." *Griffin*, 440 F.3d at 1143–44. This privileges bars testimony concerning intra-spousal, confidential expressions arising from the marital relationship. *United States v. Bolzer*, 556 F.2d 948, 951 (9th Cir. 1977). Communications made in the presence of third persons or intended to be disclosed to others are outside the privilege. *United States v. Strobehn*, 421 F.3d 1017, 1021 (9th Cir. 2005). In addition, this privilege does not shield marital confidences when those confidences concern joint criminal activity. *Vo*, 413 F.3d at 1017; *Marashi,* 913 F.2d at 731 (the policies underlying marital communications privilege "pale in the face of public concerns about bringing criminals to justice").

Here, the testimony sought from Mary Rogers and Juliet Crowe concern their role in Rogers' and Crowe's businesses, and their preparation of documents, invoices, and other paperwork on behalf of the companies. This testimony does not necessarily concern any communications between spouses, but, if so, such communications would not be privileged anyway under a theory of joint criminal activity.

//

43

I. <u>International Law Governs Helicopters Operating Over the "High Seas."</u>

Defendants made the incorrect and misleading argument numerous times that an aircraft operating on the high seas is free from *any* obligation to be registered or overseen by any national authority under international law; in other words, that defendants' helicopters could operate in a way "that would be considered piracy." *See* ECF No. 792 (08/17/20 Hr'g Tr.) 13–14:24–3, 21:9–11, 22:4–9, 23:1–4; 24:22–23; ECF No. 450 at 20-21. This argument is incorrect under international law and must be excluded.

First, even assuming defendants' aircraft are aerial work helicopters, aerial work helicopters are subject to the International Civil Aviation Organization (ICAO) Convention on Civil Aviation ("Chicago Convention"). While it is true that *one* part of this comprehensive scheme covers helicopters in international commercial air transport or international general aviation operations, international aviation law is contained in numerous other parts of the Chicago Convention itself and the rest of the ICAO Annexes; and those laws *do* apply to defendants' aircraft.

In particular, Article 3 of the Chicago Convention states that "[t]his Convention shall be applicable…to civil *aircraft*," (emphasis added), and "aircraft" is defined as "[a]ny machine that can derive support in the atmosphere from the reactions of the air other than the reactions of the air against the earth's surface," ICAO Annex 7, Classification of Aircraft. In other words, these rules apply to machines that fit the definition of aircraft, of which Defendants' helicopters are included.

Second, aircraft operating on the high seas are subject to registration and oversight requirements under international aviation law. The Chicago Convention and ICAO Annexes established the international flight requirements that govern civil aircraft. Every country in the world—with the exception of Lichtenstein—is a member of ICAO. ICAO has promulgated Rules

44

of the Air to which all member states must abide, and "[o]ver the high seas . . . these rules apply *without exception.*" ICAO Annex 2 (Emphasis added). These rules implement the following relevant Articles of the Chicago Convention:

- Article 12, Rules of the Air (requiring each contracting State to adopt measures to insure that every aircraft flying over or maneuvering within its territory and that every aircraft carrying its nationality mark, wherever such aircraft may be, shall comply with the rules and regulations relating to the flight and maneuver of aircraft there in force).

- Article 17, Nationality of Aircraft (requiring that "[a]ircraft have the nationality of the State in which they are registered").

- Article 20, Display of Marks (requiring that "[e]very aircraft engaged in international air navigation shall bear its appropriate nationality and registration marks.").

- Article 29, Documents Carried in Aircraft (requiring that "[e]very aircraft of a contracting State, engaged in international navigation, shall carry" its certificate of registration, its certificate of airworthiness, and the appropriate licenses for each member of the crew.

- Article 31, Certificates of Airworthiness (requiring that "[e]very aircraft engaged in international navigation shall be provided with a certificate of airworthiness issued or rendered valid by the State in which it is registered.").

- Article 32, Licenses of Personnel (requiring that "The pilot of every aircraft and the other members of the operating crew of every aircraft engaged in international navigation shall be provided with certificates of competency and licenses issued or rendered valid by the State in which the aircraft is registered.").

Likewise, the Annexes to the Chicago Convention contain important clarifications on what law applies to aircraft operating on the high seas. As noted above, Annex 2 states that "[o]ver the high seas . . . the[] rules [of the CC] apply **without exception**" (emphasis added). Additionally, Annex 2 provides ICAOs definition for the "Appropriate Authority" regarding an aircraft's "flight over the high seas: The relevant authority of the State of Registry.".

Thus, reading the Articles and Annexes together leads to two conclusions that directly rebut the defendants' argument that they are exempt from registration and certification. First, the high

45

seas are not a 'law-free' zone. Article 12 and Annex 2 unambiguously state that the Chicago Convention and the ICAO Annexes apply to aircraft operating on the high seas. ***To argue otherwise flies in the face of the plain language of these treaties.*** Second, air flight over the high seas requires registration and oversight by the applicable civil aviation authority – here, the FAA[13]. Articles 17 and 20 confirm that every aircraft must have a nationality and display marks of such nationality and registration, while Articles 29 and 31 through 33 describe how all aircraft must have valid certificates of registration and airworthiness. Further, Annex 2 makes clear that even over the high seas an aircraft is still under the authority of the State that issued its certificate of registration. Thus, despite defendants' claims to the contrary, international aviation law applies to aircraft operating on the high seas, and requires valid registration and oversight of such aircraft regardless of where they are operating.

J.  Statements of Non-Testifying Agents

During trial, agents may testify about other agents' surveillance. Such testimony is admissible under the present-sense-impression exception of Rule 803(1) of the Federal Rules of Evidence. *See, e.g.*, *United States v. Gil*, 58 F.3d 1414, 1422 (9th Cir. 1995) (testimony of agents who overheard observations of surveillance officers "easily satisfy the requirements" of Rule 803(1), as "[t]he surveillance officers were providing a description of the events at the same time they were witnessing them, so the testimony was admissible under the present sense impression exception[.]"). This case-law survives *Crawford v. Washington,* 541 U.S. 36 (2004). *See United States v. Solorio*, 669 F.3d 943, 952-54 (9th Cir. 2012).

K.  Unrelated Instances of Non-Criminal Conduct

Evidence that defendant obeyed laws or otherwise comported himself well on other

---

[13] It must be remembered that the defendants sought registration and re-registration with the FAA over 300 times due to the benefits of that registration.

46

occasions is inadmissible because it is not probative of whether he committed the crime charged in this case. *See, e.g.*, *United States v. Qaoud*, 777 F.2d 1105, 1111 (6th Cir. 1985) (affirming exclusion of evidence that defendants did not take bribes on certain occasions was inadmissible as irrelevant to whether they did take bribes on others); *United States v. Russell*, 703 F.2d 1243, 1249 (11th Cir. 1983) (affirming exclusion of evidence of specific, unrelated "good acts" as irrelevant to guilt); *United States v. Grimm*, 568 F.2d 1136, 1138 (5th Cir. 1978) ("Evidence of noncriminal conduct to negate the inference of criminal conduct is generally irrelevant."). Evidence of a "lack of prior bad acts" amounts to inadmissible character evidence under Rule 405(a), which prohibits evidence of specific instances of conduct to prove character. *See United States v. Barry*, 814 F.2d 1400, 1403 (9th Cir. 1987); *See also United States v. Hedgcorth*, 873 F.2d 1307, 1313 (9th Cir. 1989) (same).

    L.  <u>Explanation of Investigation</u>

An out-of-court statement is not hearsay when offered not for the truth but to explain how an investigation unfolded. *See United States v. Tenerelli*, 614 F.3d 764, 772 (8th Cir. 2010); *United States v. Cromer*, 389 F.3d 662, 676 (6th Cir. 2004); *United States v. Barela*, 973 F.2d 852, 855 (10th Cir. 1992); *United States v. Martin*, 897 F.2d 1368, 1371-72 (6th Cir. 1990); *United States v. Lowe*, 767 F.2d 1052, 1063-64 (4th Cir. 1985).

*//*

*//*

*//*

*//*

*//*

*//*

*//*

**VI. CONCLUSION**

      The foregoing is a summary of points the Government anticipates may arise at trial. Should any legal issues arise that have not been covered in this trial brief, the government respectfully requests leave to submit such further memoranda as may be necessary.

      RESPECTFULLY SUBMITTED this 12th of January, 2022.

                            SHAWN N. ANDERSON
                            United States Attorney
                            Districts of Guam and NMI

By:   */s/ Stephen F. Leon Guerrero*
          STEPHEN F. LEON GUERRERO
          Assistant U.S. Attorney

          */s/ Marie L. Miller*
          MARIE L. MILLER
          Special Assistant U.S. Attorney

          */s/ Samantha R. Miller*
          SAMANTHA R. MILLER
          Special Assistant U.S. Attorney

48